MILLER, Judge.
The trial court awarded plaintiff Joe Pas-ternack, Jr., a $25,000 real estate broker’s commission on the sale of some 4,200 acres of land in LaSalle Parish. Defendant Louisiana and Arizona Lands, Inc., and defendant Eddie R. Hammonds (sole shareholder of the corporation) appeal the judgment insofar as it holds them liable for the fee along with the purchasers of the property, in solido. We affirm.
Defendants contend that the broker’s fee was not earned because the tract was not sold according to the agreement under which the fee was to be paid, and that defendant Hammonds did not defraud plaintiff and cannot be held personally liable for debts of the corporation.
L & A owned the land. In 1966, a real estate broker arranged a two year lease with an option to purchase the tract for a price of $1,006,250. L & A and the prospective purchasers, the Pattens, signed the agreement. The Pattens were also sued for the $25,000 broker’s fee and a default judgment was rendered against them in that amount. They have not appealed.
The lease agreement and option covered the period January 1, 1967 through December 31, 1968. The lease provided for a rental of $40,000 for the first year and $60,000 for the second year. All rentals had to be paid before the purchase option could be exercised. When this contract was executed, Hammonds, as President of L & A, delivered a letter to the broker agreeing to pay a broker’s commission of $25,000 if the Pattens exercised the option to purchase.
The real estate broker then sold his right to the $25,000 commission to plaintiff Pas-ternack. This sale was confected after the broker furnished four documents, all of which are in the record. 1) An act of assignment of the commission from the broker to Pasternack. 2) A resolution by the L & A Board of Directors ratifying Ham-monds agreement to pay a $25,000 commission. 3) An agreement by the Pattens that they would assign their rights to Paster-nack if they didn’t exercise them. 4) An agreement by L & A that it would notify Pasternack by registered or certified mail of any default on the part of the Pattens, and give Pasternack ten days within which he could personally repair the default.
On December 9, 1968, Hammonds (personally) wrote a letter to Pasternack stating that it appeared that the Pattens would not be able to exercise the option to purchase, and Hammonds extended to Paster-nack a ten day period to exercise the option. The letter ended with the following:
“P.S. Mr. Pasternack: Mr. Patten’s $650,000.00 loan is being voted on in Milwauke tomorrow morning and we’ll know whether he acquired the loan by the following day.”
Plaintiff did not reply to Hammonds’ letter. According to plaintiff’s testimony, the Pattens notified him that the loan application was approved and that they would exercise their right to purchase the property. According to Hammonds’ testimony, he followed up his December 9th letter and told Pasternack that the Pattens had defaulted on the land rent and that he would take a cut in the price if Pasternack wished to buy the land. We note that Hammonds’ letter did not state that there had been a default in the rental payments and the corporation was obligated to give such a notice. Tr. 47.
On December 10, 1968, the $65,000 loan for which the Pattens had applied was approved. On December 11, 1968, a new agreement was made “between Eddie R. Hammonds and David I. Patten”. The to *144 tal purchase price was amended to $800,000 and it was agreed that “Mr. Hammonds will pay to Joe Pasternack * * * $25,000.” In the agreement, Hammonds agreed to personally pay additional charges relating to the property totaling $17,000. The agreement was not signed by Ham-monds individually (although it was styled as his personal agreement), but was signed by him for the corporation. Tr. 81.
Pasternack received no written communication from any defendant except the December 9th letter previously mentioned. On December 27, 1968 Hammonds conveyed all the stock of L & A to the Pattens for $950,000. On the same day, liquidation of the corporation was agreed upon by unanimous consent of the Pattens. Hammonds’ attorney was appointed liquidator. On the same date, the liquidator conveyed the lands to the Pattens who surrendered their (just acquired) stock certificates to the liquidator for cancellation. This method of handling the sale was arranged on the advice of Hammonds’ tax advisors.
On December 27, 1968, the Pattens granted a first mortgage in the amount of $650,000 against this property in favor of the Northwestern Mutual Life Insurance Company. At the same time Hammonds obtained a second mortgage in the amount of $300,000 as part of the $950,000 purchase price for the L & A stock. Ham-monds testified that he received $141,000 for the $300,000 note when he sold it.
The December 27th meeting and the transfers confected on that date were made without any notice to Pasternack. After the meeting, Hammonds had acquired for his personal account all the money representing the equity that L & A owned in the land. The Pattens had acquired for their personal account title to all the land which was the only asset owned by L & A. L & A was liquidated without a shareholder or an asset to its name. And the land previously owned by L & A was burdened with a $650,000 first mortgage in favor of an insurance company and a $300,000 second mortgage in favor of Hammonds.
On these facts the trial court held that Pasternack was entitled to the $25,000 fee and that the Pattens, L & A and Ham-monds were liable in solido. The trial court found that Pasternack checked with the Pattens followed receipt of Hammonds’ December 9th letter and learned that they were exercising their right to purchase the lands. The Pattens had until December 31, 1968 to purchase the land and they in fact purchased it on December 27, 1968. There was no way for Pasternack to purchase the land as long as the Pattens were able to exercise the option. This they did.
Defendants contend that the sale was made for less than the sum originally agreed in the lease-purchase option and therefore the obligation to pay the agreed commission terminated. The trial court held that Pasternack was not informed by anyone that the sale was not going through. Indeed, the sale and purchase was confected. The fact that the seller accepted a reduced price does not deprive the broker of his commission. Keating v. Lachney, 216 So.2d 906 (La.App. 1 Cir. 1968).
Furthermore, in the December 11th agreement between Hammonds and Patten, Hammonds agreed that the total purchase price would be reduced to $800,000 and that Hammonds would pay the $25,000 broker’s fee.
Hammonds alternatively contends that the fee is owed by the corporation and he cannot be held personally responsible. The trial court looked through the transactions of December 27, 1968 and concluded that Hammonds’ actions defrauded Pasternack of the commission. The trial court succinctly put it this way: “To let L & A and Hammonds use these corporate machinations to shield themselves from their lawful obligations, would be a fraud which the law cannot sanction.” We agree.
*145 On the morning of December 27, 1968, Hammonds was the sole owner of L & A. The corporation was the sole owner of the land and nothing else. The Pattens had an option to buy the land from L & A. That evening, Hammonds had all the cash funds representing L & A’s equity in the land; the Pattens had title to the land; the land was burdened with $950,000 in mortgages, and the corporation was for all intents and purposes liquidated. Accordingly, Paster-nack could not look to L & A for payment because the property was mortgaged for more than its .value, and if appellant’s contentions are correct, Pasternack could not look to Hammonds because of a corporate veil which renders Hammonds immune from personal liability.
We conclude as did the trial judge that Hammonds actively participated in a scheme to sell the corporation assets in such manner as to place them beyond the reach of the creditors of the corporation and in fraud of the creditors’ rights. Hammonds was the corporation President and owned all the issued and outstanding stock. There were no other officers or directors of the corporation. Hammonds substituted the Pattens for himself as liquidators of the corporation. First, he transferred all stock of the corporation to the Pattens; then the Pattens had the assets of the corporation transferred to them for the stock; then the Pattens granted a $300,000 note to Hammonds secured by a second mortgage on the land. Thus, instead of a stockholder of the corporation, Hammonds became a preferred creditor, and the mortgages exceeded the value of the assets, thereby excluding the possibility of any other creditor obtaining satisfaction of his claim. Hammonds indirectly attempted to do what he is prohibited from doing directly. Insofar as the ordinary creditors are concerned, this amounts to an unlawful dividend or distribution of the assets of the corporation. Therefore Ham-monds is individually liable to the creditors in accordance with the provisions of LSA-R.S. 12:93, subd. D, which provides:
“Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him.”
L & A was but the alter ego of Ham-monds and Hammonds cannot hide behind the corporate veil and be heard to profess his individual immunity from his fraudulent practices. See Gilman v. Babin, 195 So.2d 737 (La.App. 1 Cir. 1967) and Texas Industries, Inc. v. Dupuy & Dupuy Develop., Inc., 227 So.2d 265 (La.App. 2 Cir. 1969).
The trial court’s judgment is affirmed. Costs are assessed to defendants-appellants.
Affirmed.