407 So.2d 17 (1981)
MISSOURI MEAT COMPANY, Plaintiff-Appellant,
v.
Donald RICHARD, Pistols Plumbing and Maintenance, Inc., and Kenneth E. Vitello, d/b/a Vitello Refrigeration Service Company, Defendants-Appellees.
No. 8419.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
Rehearing Denied January 4, 1982.
Writ Granted February 19, 1982.
*19 John R. Olds, Baton Rouge, and Collings & Collings, R. William Collings, Lake Charles, for plaintiffs-appellants.
Joseph W. Greenwald, Shreveport, for defendants-appellees.
Before GUIDRY, FORET and DOUCET, JJ.
GUIDRY, Judge.
The above numbered and entitled matter was consolidated for purposes of trial in the lower court with a suit entitled AMP Service Corporation v. Donald Richard, Pistols Plumbing and Maintenance, Inc., and Kenneth B. Vitello, d/b/a Vitello Refrigeration Service Company, our docket number 8420. These cases remain consolidated on appeal and we this day render a separate opinion and judgment in No. 8420.
In these cases Missouri Meat Company, hereafter Missouri, and AMP Service Corporation, hereafter AMP, judgment creditors of a now defunct corporation, Rapides Packing and Frozen Foods of Louisiana, Inc., hereafter Rapides, seek to recover the amounts due them under their respective judgments from the defendants in these proceedings, Donald Richard, Pistols Plumbing and Maintenance, Inc., hereafter Pistols, and Kenneth B. Vitello d/b/a Vitello Refrigeration Service Company. As a basis for their entitlement to judgment, plaintiffs allege that Richard and Vitello, as directors and sole shareholders of Rapides, voted in favor of and received an unlawful distribution of the assets of Rapides in violation of LSA-R.S. 12:92(D) and LSA-R.S. 12:93(D) and are therefore responsible in judgment to the creditors of Rapides.
The trial court, finding no distribution of Rapides' assets in violation of the cited statutes, dismissed plaintiffs' suits at their cost. Plaintiffs appealed.
The record reflects no genuine dispute of material fact, a brief summary of which follows.
On February 24, 1978, and March 7, 1978, AMP and Missouri each sold and delivered certain meat products to Rapides. Rapides, a Louisiana corporation, was owned by Richard and Vitello, they being its sole stockholders, officers and directors. On March 22, 1978, Rapides advised its trade creditors, including plaintiffs, that it was contemplating bankruptcy, offering, in lieu of such action, to pay 25% of the total amount due in full discharge of all outstanding indebtedness. Presumably this plan was unacceptable because it was never put into effect. On April 30, 1978, Rapides, represented by Richard and Vitello, executed two promissory notes, payable on demand, one in the sum of $67,190.00 made payable to the order of Pistols and the other in the amount of $74,253.00, made payable to the order of Vitello Refrigeration Service Company. Both notes were secured by act of conventional mortgage covering all of the physical assets, land, machinery and plant property, owned by Rapides. The record *20 reflects and plaintiffs concede in brief that at the time Rapides was justly and truly indebted to Pistols and Vitello Refrigeration in the amounts for which the notes and mortgages were executed although such indebtedness had been previously unsecured. At all pertinent times Pistols, a Louisiana corporation, was solely owned by Richard and Vitello Refrigeration was solely owned by Kenneth Vitello's father.
At the time of execution of the aforesaid notes and mortgages Rapides was virtually insolvent and had ceased operations. Its plant property was subject to a first mortgage in favor of Calcasieu Marine National Bank which secured a promissory note with a balance due of $240,000.00. This note had been personally endorsed by Richard and Vitello. In addition to this first mortgage and the second and third mortgages granted to Pistols and Vitello Refrigeration, Rapides owed approximately $100,000.00 to its unsecured trade creditors.
On August 22, 1978 judgment was rendered in favor of AMP and against Rapides for the sum of $22,283.03. On the same date judgment was rendered in favor of Missouri and against Rapides for the sum of $7,800.00.
On November 15, 1978, Vitello Refrigeration and Pistols instituted foreclosure proceedings to enforce payment of their respective notes.[1] On December 27, 1978, the encumbered plant property was sold at judicial sale to Richard and Vitello, they being the only bidders present at the sale, for the sum of $250,000.00, the exact amount remaining due the first mortgage holder and all costs of the foreclosure proceedings. Although the judicial sale, which is made a part of the record, reflects payment of the aforesaid sum in cash, the record reflects that Richard and Vitello paid the costs in cash and simply assumed payment of the indebtedness owed to Calcasieu Marine National Bank.
On April 17, 1980, Richard and Vitello sold the property acquired by them at the aforesaid judicial sale to the Calcasieu Parish School Board for the sum of $350,000.00. According to the record the sum of $73,361.51 was received by Richard and Vitello, after payment of the bank mortgage, real estate commission, and property taxes. Richard and Vitello testified that very little of this sum, if any, constituted a profit on the transaction as a result of out of pocket expenses for maintenance of the plant property and interest on the bank loan, during the fifteen month period between the judicial sale and the sale to the School Board.
One day previous to the School Board sale, i.e., April 16, 1980, AMP and Missouri instituted the instant suits against Richard, Kenneth Vitello, d/b/a Vitello Refrigeration Service Company and Pistols, seeking collection of their judgments against Rapides.
The sole issue for resolution on this appeal concerns whether under the facts set forth Richard, Vitello and Pistols are responsible for payment of the judgments rendered in favor of plaintiffs and against Rapides, by reason of their having authorized and/or received an unlawful distribution of Rapides' assets in violation of LSA-R.S. Sections 12:92(D) and/or 12:93(D).[2]
Sections 92 and 93 of Title 12 of the Louisiana Revised Statutes read in pertinent part as follows:
"Section 92. Liability of directors and officers

. . . . .

D. If any dividend shall be paid in violation of this Chapter, or if any other unlawful distribution, payment or return of assets be made to the shareholders, or if the corporation purchase or redeem any of its own shares in violation of this Chapter, the directors who knowingly, or without the exercise of reasonable care and inquiry, voted in favor thereof shall *21 be liable jointly and severally to the corporation, or to creditors of the corporation, or to both, in an amount equal to the amount of the unlawful distribution. An action to enforce such liability must be brought within two years from the date on which the distribution was made, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit."

"Section 93. Liability of subscribers and shareholders
. . . . .
D. Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him. An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit."
Relief is afforded a corporation or creditors of a corporation under the provisions of the cited statutes when it is made to appear that unlawful distribution has been made of corporate assets having some value. When this occurs, the directors who, knowingly or without the exercise of reasonable care vote in favor of such action are liable jointly and severally to the corporation and/or to its creditors, in an amount equal in value to the amount of the unlawful distribution. Likewise, the shareholder receiving such unlawful distribution is liable to the corporation and/or to its creditors, in an amount not exceeding in value the amount received by the shareholder. Thus in the instant case the issue becomes whether the actions of Richard and Vitello in their capacities as officers, directors and shareholders or Rapides, which authorized and ultimately granted preferred creditor status to a corporation solely owned by Richard and to a business entity solely owned by Vitello's father, constituted an unlawful distribution of assets within the purview of LSA-R.S. 12:92 and 93. We answer this query in the negative and affirm the action of the trial court which dismissed plaintiffs' suits concluding that although the transaction was invalid Pistols, Vitello Refrigeration, Richard and Vitello derived no benefit or advantage and nothing of value as a result of the transaction.
An officer or director of a corporation is not precluded from becoming a creditor of the corporation which he serves. However, the relation of officers and directors to corporations is of such a fiduciary nature that transactions between them are subject to close scrutiny. A transaction by an officer and director with the corporation he serves which grants to him, as a bona fide but unsecured creditor of the corporation, preferred status over other unsecured creditors at a time when the corporation is known to be insolvent, is invalid. In support of this conclusion we find the following in 19 Am.Jur.2d, Corporations, Section 1574:
"The denial of the right of directors of an insolvent corporation to obtain a preference by way of security or payment of debts due them by the corporation is not as a rule founded upon the trust fund doctrine, but upon the theory that it is inequitable that a director, whose position as to knowledge of conditions and power to act for the corporation gives him an advantage, should be permitted to protect his own claim to the detriment of others at a time when it is apparent that all the unsecured debts of the corporation are equally in peril and that all of them cannot be paid. The courts sustaining that rule regard the director as in a sense trustee for all the stockholders and creditors so far at least as to render it improper for him to act solely for himself in disregard of the interest of those for whom he is such trustee. A director may not take advantage of his superior means of information either by confession of judgment or otherwise."
Such a transaction was declared invalid in Abraham v. Lake Forest, Inc., 377 So.2d 465 (La.App. 4th Cir. 1979) writs denied, 380 So.2d 99 and 100 (La.1980).
*22 Although the transaction under scrutiny in this case was clearly invalid plaintiffs can be afforded no relief under the provisions of LSA-R.S. 12 Sections 92 and 93 because the evidence fails to show that Richard, Vitello, Pistols and Vitello Refrigeration received anything of value as a result of the invalid transaction. Proof of the receipt of something of value as a result of an unlawful distribution is clearly required as Section 92 fixes the liability of the director in an amount equal in value with the amount of the unlawful distribution and Section 93 fixes the liability of the shareholder to an amount not exceeding in value the amount received by him. In all of the cases to which we have been referred by able counsel for plaintiffs, the defendant was shown to have received something of value as a result of the unlawful distribution. In Abraham, supra, the last remaining assets of an insolvent subsidiary corporation, totaling in excess of $33,000.00, was shown to have been transferred to the parent corporation in total disregard of the rights of creditors. In McGregor v. United Film Corp., 351 So.2d 1224 (La.App. 1st Cir. 1977) the rights and credits of a debtor corporation were diverted and distributed to its only stockholder in violation of the rights of an injured employee seeking workmen's compensation benefits. See also Pasternack v. Louisiana and Arizona Lands, Inc., 254 So.2d 142 (La.App. 3rd Cir. 1971).
In this case, although all of the physical assets of Rapides were sold at judicial sale as a result of foreclosure proceedings instituted by Pistols and Vitello Refrigeration, the only creditor to receive payment as a result of that sale was the Calcasieu Marine National Bank, holder of the first mortgage. Pistols and Vitello Refrigeration received absolutely nothing from the sale and as a result thereof the mortgages securing the indebtedness owed them by Rapides were ordered cancelled. Plaintiffs suggest in brief that the execution of the notes and mortgages to Pistols and Vitello Refrigeration afforded defendants a bidding advantage at the judicial sale which was something of value in that defendants were in a position to purchase the property upon payment of the first mortgage indebtedness, whereas plaintiffs were in a position of purchasing the plant property only by payment of the amounts due under all three mortgages plus costs. We find no merit to plaintiffs' argument. We have previously demonstrated that the transaction in question was clearly unlawful. Therefore, defendants were not in fact entitled to a preference over other unsecured creditors. However, in any event, there is no evidence in the record to support plaintiffs' suggestion that they did not bid at the judicial sale because of the prior execution by Rapides of the second and third mortgages. To the contrary, the record reflects that plaintiffs had no representative at the sale and expressed no interest therein, the only interested persons present being Richard and Vitello. Plaintiffs made no complaint and took no action whatever either before or after the judicial sale until Richard and Vitello managed to sell the Rapides plant some fifteen months later. Under such circumstances, plaintiffs can hardly be heard to complain that the execution of the notes and mortgages somehow granted Richard and Vitello something of value which deprived the unsecured creditors of the opportunity to exercise their rights against the assets of Rapides.
Finally, plaintiffs assert that as a result of the unlawful transaction of defendants were able to purchase all of the assets of Rapides and as a result thereof Richard and Vitello derived a profit of $73,361.51 when such property was conveyed to the Calcasieu Parish School Board. They assert that this circumstance indirectly reflects the value of the unlawful transaction. We find this contention equally without merit. We have previously shown that Richard and Vitello did not acquire the Rapides property as a result of any preference derived from the unlawful transaction. Furthermore, the record does not establish that Richard and Vitello actually profited from the sale to the School Board. As previously mentioned Richard and Vitello testified that the difference in the amount received and that owed on the Rapides *23 property was only sufficient to reimburse them for expenses incurred for maintenance, interest, etc. during the fifteen month interim between the judicial sale and the sale to the School Board.
In sum, we find, that although the transaction of which plaintiffs complain was unlawful, as a result thereof defendants derived nothing of value. Accordingly, plaintiffs' actions seeking relief under the provisions of LSA-R.S. 12: Sections 92 and 93 was properly denied by the trial court.
For the reasons assigned the judgment of the trial court is affirmed at plaintiff-appellant's cost.
AFFIRMED.
NOTES
[1] Richard and Vitello testified that foreclosure proceedings were instituted at the behest of Calcasieu Marine National Bank but were instituted on the second and third mortgages in order to save attorney's fees.
[2] Plaintiffs do not contend that defendants are liable to them by reason of fraud or under the alter ego doctrine.