419 So.2d 911 (1982)
AMP SERVICE CORPORATION and Missouri Meat Company
v.
Donald RICHARD, et al.
No. 82-C-0307.
Supreme Court of Louisiana.
September 7, 1982.
John R. Olds, Olds & Day, Baton Rouge, R. William Collings, Collings & Collings, Lake Charles, for applicant.
Joseph W. Greenwald, Shreveport, for respondents.
CALOGERO, Justice.[*]
With Rapides Packing and Frozen Foods of Louisiana, Inc. insolvent, its sole directors and shareholders, Donald Richard and Kenneth Vitello, favored two of Rapides' unsecured creditors, corporations *912 which they respectively owned, by granting these creditors promissory notes and mortgages on real property belonging to Rapides to secure pre-existing debts. Ultimately these creditor corporations foreclosed and Richard and Vitello individually acquired Rapides' property at a sheriff's sale in connection with the foreclosure.
La.R.S. 12:92(D) and La.R.S. 12:93(D) impose liability upon participating directors and recipient shareholders in favor of corporate creditors for the unlawful distribution of corporate assets to shareholders.
The narrow legal question presented is whether plaintiffs, two unsecured creditors of Rapides who have reduced their claims against Rapides to judgment, are entitled to recover from one or more of the designated defendants, Richard, and Vitello personally, and/or the creditor corporations which were favored, on the strength of La.R.S. 12:92(D) and/or La.R.S. 12:93(D).
For the reasons which follow we determine that plaintiffs are not entitled to the judgments they seek.
The facts of this case are not in dispute and are as follow. On February 24, 1978, and March 7, 1978, plaintiffs, AMP Service Corporation (hereinafter referred to as AMP) and Missouri Meat Company (hereinafter referred to as Missouri) each sold and delivered certain meat products to Rapides Packing and Frozen Foods of Louisiana, Inc. (hereinafter referred to as Rapides). Rapides was a Louisiana corporation owned by Donald Richard and Kenneth Vitello, they being its sole stockholders, officers and directors. On March 22, 1978, Rapides advised its trade creditors, including plaintiffs, that it was contemplating bankruptcy, offering in lieu of such action, to pay 25% of the total amount due in full discharge of all outstanding indebtednesses. This plan was unacceptable to the creditors. It was never put into effect.
On April 30, 1978, Rapides executed two promissory notes, payable on demand, one in the sum of $67,190.00 payable to Pistols Plumbing and Maintenance, Inc. (hereinafter referred to as Pistols), and another in the sum of $74,253.00 payable to Vitello Referigeration Service Company (hereinafter referred to as Vitello Refrigeration). Both notes were secured by an act of conventional mortgage covering the physical assets owned by Rapides (which essentially consisted of the plant property). At all pertinent times, Pistols was a Louisiana corporation solely owned by Richard, and Vitello Refrigeration was a Louisiana corporation solely owned by Vitello.[1]
The record reflects and plaintiffs concede in brief, that at the time the notes and mortgages were executed Rapides was justly and truly indebted to Pistols and Vitello Refrigeration, in the amounts for which the notes and mortgages were executed, for work they had previously performed, although such indebtedness had until then been unsecured.
The record further reflects that at the time the notes and mortgages were executed, Rapides was virtually insolvent and had ceased operations. Its plant property was subject to a first mortgage in favor of Calcasieu Marine National Bank which secured a promissory note with a balance due of $240,000.00. This note had been personally endorsed by Richard and Vitello. In addition to this first mortgage and the second and third mortgages granted to Pistols and Vitello Refrigeration, Rapides owed approximately $100,000.00 to its unsecured trade creditors.
On August 22, 1978, judgments were rendered against Rapides in favor of AMP in the sum of $22,283.03 and in favor of Missouri in the sum of $7,800.00.
On November 15, 1978, Pistols and Vitello Refrigeration instituted foreclosure proceedings to enforce collection on their respective notes. On December 28, 1978, the encumbered property was sold at judicial sale to Richard and Vitello, they being the *913 only bidders present at the sale, for the sum of $250,000.00, an amount sufficient to cover only the balance due on the first mortgage and costs of the foreclosure proceedings. Although the judicial sale reflects payment of the $250,000.00 in cash, Richard and Vitello merely paid the costs in cash and assumed payment of the indebtedness owed to Calcasieu Marine National Bank. Accordingly, Richard and Vitello apparently acquired the property free and clear of the Pistols and Vitello Refrigeration mortgages and other later inscribed encumbrances, including the plaintiffs' judgments.[2]
On April 17, 1980, Richard and Vitello sold the property acquired by them at the December 28, 1978 judicial sale to the Calcasieu Parish School Board for the sum of $350,000.00. According to the record, the sum of $73,361.51 was received by Richard and Vitello after payment of the bank mortgage, real estate commission, and property taxes. Richard testified that none of that sum constituted profit on the transaction because of the out of pocket expenses for maintenance of the plant property, insurance, interest on the bank loan and miscellaneous expenses, during the fifteen month period between acquisition at the judicial sale and sale of the property to the school board. (He itemized $75,319.58 of such expenses.)
One day before the sale of the property to the school board, April 16, 1980, AMP and Missouri filed the present law suits against Richard and Vitello personally, and Pistols and Vitello Refrigeration. They seek judgments in the same respective amounts as their judgments against Rapides.
Plaintiffs base their claims on La.R.S. 12:92(D) and La.R.S. 12:93(D), provisions of the Louisiana Business Corporation Law which create liability in favor of creditors in both directors and shareholders who participate in an unlawful distribution of corporate assets to shareholders. The statutes provide in pertinent part as follows:
Section 92. Liability of directors and officers.
. . . . .
(D) If any dividend shall be paid in violation of this Chapter, or if any other unlawful distribution, payment or return of assets be made to the shareholders, or if the corporation purchase or redeem any of its own shares in violation of this Chapter, the directors who knowingly, or without the exercise of reasonable care and inquiry, voted in favor thereof shall be liable jointly and severally to the corporation, or to the creditors of the corporation, or to both, in an amount equal to the amount of the unlawful distribution. An action to enforce such liability must be brought within two years from the date on which the distribution was made, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit. (Emphasis provided.)
Section 93. Liability of subscribers and shareholders.

. . . . .

*914 (D) Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to the creditors of the corporation, or to both, in an amount not exceeding the amount so received by him. An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit. (Emphasis provided.)
Plaintiffs contend that the granting of the notes and mortgages to Pistols and Vitello Refrigeration was an unlawful distribution of corporate assets to shareholders. They make this contention notwithstanding that Pistols and Vitello Refrigeration were not shareholders of Rapides, and notwithstanding that the transactions were simply the granting of promissory notes and mortgages as security for pre-existing just debts.[3] Richard and Vitello were the sole directors and shareholders of Rapides. They were also the persons who were the controlling owners of the creditor corporations, Pistols and Vitello Refrigeration. Thus, plaintiffs argue that Richard and Vitello are liable to them as directors who made an unlawful distribution of corporate assets to shareholders [La.R.S. 12:92(D)], and as shareholders who were recipients of the corporate assets unlawfully distributed. La.R.S. 12:93(D).
The trial court found no distribution of Rapides' assets in violation of the cited statutes and dismissed plaintiffs' suits. The Court of Appeal affirmed the judgments of the trial court but for somewhat different reasons. While the Court of Appeal also found that there had been no unlawful distribution of corporate assets in favor of shareholders in violation of La.R.S. 12:92(D) and La.R.S. 12:93(D), they nonetheless concluded that the transaction was invalid. Yet they affirmed the lower court judgment upon finding that the defendants had derived no gain from the transaction.[4]Missouri Meat Co. v. Donald Richard, et al., 407 So.2d 17 (La.App. 3rd Cir. 1982); AMP Service Corp. v. Donald Richard, et al., 407 So.2d 23 (La.App. 3rd Cir. 1982).
We granted writs to review the matter, chiefly prompted by a concern over the finding by the Court of Appeal that defendants received nothing of value.[5] For the following reasons, we affirm the lower court judgments in favor of defendants.
In order for plaintiffs to prevail under La.R.S. 12:92(D) and La.R.S. 12:93(D) they must establish that there was an unlawful distribution of assets, and also that the unlawful distribution was made to shareholders. They have failed in both respects.
To begin with, there was no unlawful distribution of assets to Pistols and Vitello Refrigeration. Rapides, through its directors, Richard and Vitello, granted to Pistol and Vitello Refrigeration a promissory note and mortgage on the corporate property to secure a valid pre-existing debt for work these corporations had performed *915 for Rapides sometime earlier. Simply granting a creditor security for a pre-existing debt is not an unlawful transaction. Nor is it a distribution of corporate assets. Plaintiffs rely on several cases in support of their contention that it was an unlawful distribution of corporate assets. Abraham v. Lake Forest, 377 So.2d 465 (La.App. 4th Cir. 1979); McGregor v. United Film Corp., 351 So.2d 1224 (La.App. 1st Cir. 1977); and Pasternack v. Louisiana and Arizona Lands, Inc., 254 So.2d 142 (La.App. 3rd Cir. 1971). These cases are distinguishable and do not support their contention.[6]
Furthermore, there is a real question in this case, even if we are to assume that there was an unlawful distribution of assets, as to whether the unlawful distribution was made to shareholders. Under the facts involved in this case the notes and mortgages were granted not to Rapides shareholders Richard and Vitello, but to two distinct Louisiana corporations, Pistols and Vitello Refrigeration. And while admittedly the two corporations were owned and controlled by Richard and Vitello, the notes and mortgages were simply security contracts for legitimate pre-existing debts of Rapides.
Plaintiffs, other creditors of Rapides, have relied solely on La.R.S. 12:92(D) and La.R.S. 12:93(D) as the source of their remedy. These two are the only provisions of the Louisiana Business Corporation Law which expressly provide for the liability of directors and shareholders to creditors. As stated above, however, in order to obtain recovery under these provisions, the creditor must establish that there was an unlawful distribution of the corporate assets to a shareholder. Plaintiffs herein have simply not proven such.
These plaintiffs, however, were not without a remedy under the law.
The Louisiana Business Corporation Law, at La.R.S. 12:95[7] specifically reserves, to any person, any right that person may have, by law, against a director or shareholder of a corporation because of any fraud practiced upon him. One such right is the revocatory action to annul contracts in fraud of creditors. La.C.C. art. 1968 et seq.
Articles 1970, 1983 and 1984 are particularly pertinent to the issue before us.[8] Read together they provide that a transaction, by which there is a preference given to one creditor over the other creditors at a *916 time when the debtor is in insolvent circumstances to the knowledge of the creditor who is being preferred, is deemed to be made in fraud of creditors, and the injured creditor may bring an action to have the transaction set aside. In connection therewith the preferred creditor shall "only lose the advantage endeavored to be secured by such contract." La.C.C. art. 1983. However, the offended creditors' right to set aside a security contract of that nature is restricted by La.C.C. art. 1987. That article provides that a contract of this nature cannot be set aside if it "were made more than one year before bringing the suit to avoid it...."[9]
Plaintiffs neglected to take advantage of their legal remedy. Instead, they waited until the property was to be resold to the school board (over twenty-three months after the security contract was granted, and over fifteen months after the foreclosure sale), at what they perceived to be a profit to Richards and Vitello, before bringing any action against these defendants. By that time, their cause of action had prescribed. Plaintiffs had ample opportunity to bring their revocatory action. As stated above, the security agreement between Rapides, and Pistols and Vitello Refrigeration, was entered into on April 30, 1978. In March of that same year, plaintiffs had been notified that Rapides was in insolvent circumstances and contemplating bankruptcy. At the time the security agreement was entered into (promissory note secured by mortgage,) Rapides had ceased all operations. On August 22, 1978, both plaintiffs obtained judgments against Rapides for goods they had delivered to defendant but for which they had not been paid. It would have been a simple matter for plaintiffs to couple their suit on the debt with one to annul the note and mortgage, a procedure specifically authorized by La.C.C., art. 1975.[10] On November 15, 1978 defendants Pistols and Vitello Refrigeration instituted foreclosure proceedings. Plaintiffs could have intervened in those proceedings. Even following the foreclosure of December 20, 1978 and until April 30, 1979, the anniversary of Rapides' granting Pistols and Vitello Refrigeration the notes and mortgages, plaintiffs could have availed themselves of the revocatory action under La.C.C. arts 1970 and 1987. Since the property was not acquired by an innocent third party, there would have be no impediment, even after foreclosure and until April 30, 1979, to revoking the note and mortgage and the ensuing foreclosure sale. Plaintiffs instituted none of these proceedings. Instead plaintiffs waited until the property was about to be sold to the school board before bringing any action against these defendants. Their lawsuit, even if construed to be one to invalidate or avoid a security contract made in fraud of their rights, was not filed within the requisite one year provided by La.C.C. art. 1987.
The trial judge was correct in finding that plaintiffs were entitled to no relief under La.R.S., 12:92(D) and La.R.S. 12:93(D). The preferential treatment, by execution of the promissory notes and mortgages, was not an unlawful distribution of assets. Relief under La.R.S. 12:92(D) and La.R.S. 12:93(D) was not available to these plaintiffs and their remedy under the Civil Code articles cited hereinabove had prescribed.

Decree
For the foregoing reasons, the judgments of the district court and the Court of Appeal are affirmed.
AFFIRMED.
*917 LEMMON and MARCUS, JJ., dissent and assign reasons.
BLANCHE, J., dissents.
MARCUS, Justice (dissenting).
I consider that Richard and Vitello, as participating directors and recipient stockholders of Rapides (insolvent corporation), are liable to plaintiff creditors of Rapides for the "unlawful distribution of assets" to them as shareholders of Rapides under La. R.S. 12:92(D) and 12:93(D).
First, Rapides, while insolvent, gave secured status to the unsecured claims of two corporations (Pistols and Vitello Refrigeration) by executing two demand notes secured by mortgages on plant ile Pistols and Vitello Refrigeration were not shareholders of Rapides, the two corporations were owned by Richard and Vitello.
Thereafter, Pistols and Vitello Refrigeration foreclosed on the mortgages. At the judicial sale, the encumbered property was adjudicated to Richard and Vitello for $250,000. Their bid was sufficient to cover the balance on the first mortgage ($240,000) in favor of the bank and costs. The first mortgage was assumed by Richard and Vitello; all inferior encumbrances were cancelled.
Later, Richard and Vitello sold the property to the school board for $350,000; $73,361.51 was received by them after payment of the first mortgage, real estate commission, and taxes. They claim that their expenses in maintaining the property since acquisition (fifteen months) exceeded the proceeds received by them from the sale.
Generally, granting a creditor security for a pre-existing debt is not an unlawful transaction; however, not so where, as here, the debtor corporation is insolvent at the time and the directors and stockholders of the debtor corporation and the favored creditor corporation are the same. Giving secured status to Pistols and Vitello Refrigeration (who, while not shareholders of Rapides, were owned by shareholders of Rapides) enabled these corporations to foreclose on the property and permitted Richard and Vitello to bid the property in at the judicial sale without putting up any cash (other than costs) to the extent of the liens of the favored corporations owned by them.
As a result of this scenario, Richard and Vitello, as shareholders of Rapides, ended up with assets (plant property) of Rapides. I consider this to have been an unlawful distribution of assets to them.
Under the above referred to statutes, unlawful distribution of assets to shareholders imposes liability on the directors and stockholders "in an amount equal to the amount of the unlawful distribution" or "in an amount not exceeding the amount so received by him." In the instant case, I consider the amount received by Richard and Vitello as a result of this unlawful transaction to be $73,361.51 (amount received by them from the sale of the property).
Accordingly, I respectfully dissent.
LEMMON, Justice, dissenting.
As the majority points out, the unsecured creditors had another remedy available by filing a revocatory action and annulling the contract made in fraud of creditors. However, the existence of another remedy does not preclude a suit under R.S. 12:92(D) and 12:93(D), in which the penalty imposed upon directors and officers for unlawful distribution of assets to shareholders is personal liability for the corporate debts in an amount equal to the amount of the unlawful distribution.
In my opinion the granting of a mortgage in consideration of a preexisting debt, at a time when the corporation was insolvent and out of business, constituted an unlawful distribution of assets to the shareholders.[1] The corporation's only asset at the time was its equity in the property above the first mortgage, and the obvious purpose for *918 granting the second and third mortgages was to give that equity to the mortgagees in the form of a bidding advantage over unsecured creditors in the eventual foreclosure of the property. Whether or not Richard and Vitello actually gained economically in the long run is of no moment. The penalty of personal liability is imposed for attempting to gain economic advantage by an unlawful distribution of assets, whether or not any economic gain is actually recognized.[2]
I would hold Richard and Vitello personally liable.
NOTES
[*] Judge James C. Gulotta, of the Court of Appeal, Fourth Circuit participated in this decision as associate justice ad hoc in place of Associate Justice Jack C. Watson, recused.
[1] Vitello Refrigeration, the record reflects, was managed by Kenneth Vitello, Jr., but owned by his father, Emile Vitello. Counsel for the parties in argument, however, have conceded that for purpose of our decision in the case Vitello, Jr. should be treated as though he were in fact the sole corporate shareholder of Vitello Refrigeration.
[2] Richard testified that he and Vitello purchased the property at the sheriff's sale on behalf of the seizing creditors Pistols and Vitello Refrigeration, and that Pistols and Vitello Refrigeration sold the property to the school board. However, the sheriff's deed reflects Richard and Vitello, individually, as acquiring the property, and the notarial act by which the property was sold to the school board shows Richard and Vitello and their wives, individually, selling the property. While the exhibits filed in the trial court do not indicate that the Pistols and Vitello Refrigeration mortgages were ordered cancelled by the sheriff, we can reasonably assume that the notary who passed the sale of the property to the school board required the vendors to cause cancellation of those two mortgages, and that the $350,000 price stated in the sale and in the accompanying vendor/vendee statements represents the entire gross sales price for the property. In any event no one has suggested that the school board paid more than $350,000 or that the property they acquired is still encumbered. Under this analysis Pistols and Vitello Refrigeration fared no better than the plaintiffs. None of them recovered on their debts. However, the outcome would be no different if Pistols and Vitello Refrigeration had acquired the property at foreclosure and sold it to the school board. The reasons given in this opinion for denying plaintiffs recovery against Richard and Vitello would be equally applicable in this latter instance.
[3] Perhaps inferentially they are also suggesting that the net result, whereby Richard and Vitello purportedly received what equity there was in the real property (after foreclosure, acquisition, and later sale, and more than twenty-three months after the notes and mortgages had been given Pistols and Vitello Refrigeration) constituted, in effect, a distribution of assets to shareholders. This unstated argument has been considered only in passing, because of the absence of surreptition on the part of defendants and the availability to the unsecured creditors of the revocatory action under C. C. arts. 1970, 1983, 1984, and 1987, discussed infra.
[4] The Court of Appeal based its conclusion that defendants had derived no gain from the transaction on the fact that although they realized the sum of $73,361.51 in excess of what they paid for the property, this sum was offset by expenditures in at least that sum, between acquisition and sale, for maintenance, interest on the first mortgage note, and miscellaneous expenses.
[5] When we entertained the writ application, it seemed to us that the Court of Appeal had erred in holding that the receipt of the note and mortgage on the property, which gave defendants, Pistols and Vitello Refrigeration and correspondingly Richard and Vitello, preferential status over the other creditors, was not something of value. At a minimum the second and third mortgages gave to Pistols and Vitello Refrigeration, and Richard and Vitello as well, a bidding advantage at the foreclosure sale.
[6] In Abraham and McGregor, there were, respectively, a transfer of cash to a shareholder and a transfer of accounts receivable to satisfy a shareholder's debt. In Pasternack, in a series of simultaneously executed instruments (sale of all stock to prospective land purchaser, liquidation of corporation, sale of land by liquidator to purchaser coincident with cancellation of stock certificate, and land purchaser's granting a mortgage to original corporate shareholder on real property acquired) the sole shareholder attempted, unsuccessfully, to convert his ownership of a corporation, whose sole asset had been real property, into a mortgage on the transferred real property, to the prejudice of a creditor of the corporation.
[7] La.R.S. 12:95 provides:

Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against a promoter, subscriber, shareholder, director of officer of the corporation, because of any fraud practiced upon him by any of such persons of the corporation, or in derogation of any right which the corporation may have because of any fraud practiced upon it by any of these persons.
[8] La.C.C. art. 1970 provides:

The law gives to every creditor, when there is no cession of goods, as well as to the representatives of all the creditors where there is any such cession, or other proceedings by which they are collectively represented, an action to annul any contract made in fraud of their rights.
La.C.C., art. 1983 provides:
But if such fraud consisted merely in the endeavor to obtain a preference over other creditors, for the securing of payment of a just debt, under circumstances in which by law the endeavor to obtain such preference is declared to be a constructive fraud in such case the party shall only lose the advantage endeavored to be secured by such contract, and shall be reimbursed what he may have given or paid, but without interest; and he shall restore all advantages he has received.
La.C.C. art. 1984 provides:
Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives the obligee, if he be a creditor, any advantage over other creditors of the obligor.
[9] La.C.C. art. 1987 provides in full:

No contract made between the debtor and one of his creditors for the purpose of securing a just debt, shall be set aside under this section, although the debtor were insolvent to the knowledge of the creditor with whom he contracted, and although the other creditors are injured thereby, if such contract were made more than one year before bringing the suit to avoid it, and if it contain no other cause of nullity than the preference given to one creditor over another.
[10] La.C.C. art. 1975 provides:

The plaintiff in the action given in this section may join the suit for annulling the contract to that which he brings against the original debtor for liquidating his debt by a judgment, and in such suit either of the defendants may controvert the demand of the plaintiff.
[1] The debts for which the mortgage was given as security were two years old. If the mortgages had been granted at the time the debts were incurred, then plaintiffs would have had an opportunity to consider these as secured debts in deciding whether to extend credit to the corporation 30 days before the mortgage was belatedly executed.
[2] Because Richard and Vitello were personally liable on the first mortgage to the bank, they would have had to pay the interest on that loan between the date of the questioned mortgage and the date of the foreclosure sale, whether or not they bid in the property at the foreclosure sale. Therefore, the fact that the approximately $73,000 advantage (spoken of in the majority opinion) was offset by approximately the same amount of expenditures for interest and other expenses of maintaining the property and the first mortgage, Richard and Vitello did secure an economic advantage by being reimbursed for the amount of interest which they would have had to pay on the first mortgage under any circumstances.