**Arthur Lyle ROBSON and Donald Lowell, Appellants,**

v.

**Joseph SMITH, Edward A. Merdes, Ruth Hanson and Alaska Northern Development, Inc., Appellees.**

**No. S–2831.**

Supreme Court of Alaska.

July 21, 1989.

Thomas E. Fenton, Fairbanks, for appellants.

Daniel G. Bruce, Baxter & Marks, Juneau, for appellee Joseph Smith.

Edward A. Merdes, Fairbanks, pro se and for appellee Alaska Northern Development, Inc.

Daniel E. Winfree, Law Offices of Daniel E. Winfree, Fairbanks, for appellee Ruth Hanson.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case raises the question whether a corporation's payment of secured creditors, who are also corporate directors, violates AS 10.05.216 when unsecured corporate creditors remain unpaid. Arthur Robson and Donald Lowell sued the directors of Alaska Northern Development, Inc. (A.N.D.), Joseph Smith, Edward Merdes and Ruth Hanson (the directors), in their individual capacities. Robson and Lowell sought to have money paid by and to the corporation's directors returned to the corporation to satisfy their own claim and the claims of similarly situated unsecured corporate creditors. The directors were granted summary judgment, dismissing Robson and Lowell's suit. The trial court found that the facts did not support a claim under AS 10.05.216(c).[1] We affirm.

## I. FACTS AND PROCEEDINGS

Prior to 1976, Robson, Lowell and Kenneth Newberry were partners. Their partnership owned Gate 21, a hanger, at Fairbanks International Airport. It leased Gate 21 to Alyeska Pipeline Service Company.

In 1976 A.N.D. was formed. Shortly after its formation, A.N.D. learned of an opportunity to purchase Gate 21. Robson and Lowell assigned their interest in Gate 21 to Newberry; he "simultaneously resold the structure" to A.N.D. A.N.D. assumed the obligations of the Robson–Lowell–Newberry assignment. Robson and Lowell each received $250,000 from the sale. This amount was not paid in full at the time of the sale. Newberry received a promissory note and stock in A.N.D.

A.N.D. operated Gate 21 at a loss. Over the period of time A.N.D. operated Gate 21, Joseph Smith, Betty Smith and Gastineau Contractors[2] loaned A.N.D. in excess of 1.2 million dollars. These loans were secured by deeds of trust given by A.N.D. Merdes also made loans to A.N.D., which were secured by deeds of trust.

Hanson was assigned Newberry's interest in Gate 21, the promissory note and A.N.D. stock upon Newberry's death. The obligation represented by the promissory note was later secured by a deed of trust.

The Smiths and Gastineau Contractors initially loaned money to A.N.D. in 1977. The money was used by A.N.D. to pay obligations associated with operating Gate 21.[3] The need for money to preserve Gate 21 became acute in 1979 after Alyeska decided not to renew its lease. A.N.D. decided to sell the gate at that time.

A.N.D. sold Gate 21 to Dennis Wise in 1982. It used the proceeds of the sale to pay its known obligations, including the secured obligations owed to the Smiths, Merdes, Hanson and Gastineau Contractors. Gastineau Contractors and the directors were paid less than the full amount of the debts owed them by A.N.D.

Prior to A.N.D.'s purchase of Gate 21, Alyeska overpaid its rent to the Robson–

---

**1.** AS 10.05.216(c) provides:

The directors who vote for or assent to the distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation are jointly and severally liable to the corporation for the value of the assets distributed, to the extent that the debts, obli-

gations and liabilities of the corporation are not paid and discharged.

**2.** Gastineau Contractors was a closely held corporation owned by the Smiths.

**3.** Part of this money was used to pay Robson and Lowell the remainder of the $250,000 owed them, as well as other creditors.

Lowell–Newberry partnership. In 1976 the partnership gave to Alyeska a promissory note for the overpaid rent. Originally the note was for $31,450. At the time of the sale to A.N.D., $21,450 was still owed on the note.

Robson and Lowell maintained that A.N.D. assumed the partnership's obligation on the Alyeska note when it purchased Gate 21. Although A.N.D. may have agreed through its president to assume the obligation in 1977, Smith contended such an agreement would have been outside the scope of the president's authority. Additionally, in 1979 A.N.D.'s board of directors denied it was responsible for the obligation, asserting it never assumed nor contracted to pay it.

In 1983 Alyeska sued Robson and Lowell, seeking the $21,450 still owed it. Robson and Lowell impleaded A.N.D., claiming that if Alyeska prevailed they "should have judgment" through A.N.D.[4] Alyeska recovered a judgment against Robson and Lowell. They in turn recovered a judgment in the amount of $62,416.27 against A.N.D.[5]

A writ of execution issued against A.N.D. was returned unsatisfied. Robson and Lowell then sued Smith, Merdes, and Hanson, in their individual capacities, and A.N.D., alleging that the payments made to the directors, after the gate was sold to Wise, rendered A.N.D. insolvent and thus unable to pay their claim. Relying on AS 10.05.216(c), they sought to have the money paid to the directors returned to the corporation and the corporation liquidated, so that their claim could be paid.

Smith and Merdes moved for summary judgment. The trial court orally granted the motion, finding that the facts did not support a cause of action under AS 10.05.-216(c). Hanson's motion to be included in the grant of summary judgment to Smith and Merdes was granted. Final judgment was entered, and Robson and Lowell appeal.

## II. DISCUSSION

"When reviewing a grant of summary judgment, this court 'must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the facts.'" *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985) (citations omitted). Here the material facts are not in dispute. Thus, the directors are entitled to summary judgment if the law was properly applied to the facts of this case. *Id.* at 1280.

Robson and Lowell argue that the corporation cannot prefer a secured creditor, who is an officer and shareholder of the corporation, over a general unsecured creditor. They argue that each creditor should be treated equally; therefore, the money received by the directors should be returned to the corporation and paid out to each creditor on a pro rata basis.[6] They maintain that AS 10.05.216(c) compels this result.[7]

Directors, who in good faith make loans to a solvent corporation and become its secured creditors, can have their se-

---

**4.** In 1978 Robson and Lowell sued A.N.D. for breach of the original sales contract. The case was settled in 1981 when Robson and Lowell released A.N.D. from further claims involving the sale. However, Robson and Lowell never raised this issue in that suit.

**5.** The judgment included costs, attorney fees, and pre-judgment interest.

**6.** Robson and Lowell rely on two cases to support their contention that the secured debt of a corporate director cannot be paid before that of a general unsecured creditor. Neither case is on point. In *Fountain v. Burke*, 160 Ga.App. 262, 287 S.E.2d 39 (1981), the director paid his

unsecured debt in preference to other unsecured debtors. The director and sole shareholder in *Missouri Meat Co. v. Richard*, 407 So.2d 17 (La.App.1981), secured its antecedent debt after the corporation became insolvent. In this case the director's loans were secured prior to the sale of Gate 21 by A.N.D.

**7.** Robson and Lowell rely on *Wakeman v. Paulson*, 264 Or. 524, 506 P.2d 683 (1973), for the proposition that a creditor may bring an action to enforce liability against the corporate directors. However, due to our resolution of this case we need not decide if creditors have a cause of action against corporate directors under AS 10.05.216.

cured debt validly paid ahead of unsecured creditors. *Foster v. Arata*, 74 Nev. 143, 325 P.2d 759 (1958); *see generally* Annotations, *Validity of Security for Contemporaneous Loan to Corporation by Officer, Director or Stockholder*, 31 A.L.R.2d 663 (1953); 3 W.M. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 908 (rev. perm. ed. 1981) (Fletcher).[8]

In *Foster* the directors took deeds of trust from the corporation to secure loans they made to it for the purpose of preserving the corporation's primary asset. *Foster*, 325 P.2d at 761–62. The court observed that it was " 'settled law' " that such transactions were valid if entered into fairly. *Id.*, 325 P.2d at 764 (citation omitted). The court there relied *inter alia* on the following factors to judge the validity of the secured loans made by the directors to the corporation: that the loans were essential to the corporation; that the loans were for the preservation of assets and for the benefit of the corporation; that the loans were used entirely for corporate business to meet corporate obligations; that the loans were made in good faith and upon reasonable terms; that the corporation was solvent. *Id.*

■ Applying these factors to this case, it is clear that the secured debts are valid and should be honored.

The loans at issue here were necessary to maintain A.N.D.'s existence. The loans benefited the corporation and preserved its primary asset, Gate 21. As Smith stated, the loans were made so A.N.D. could meet the obligations it had incurred in purchasing and operating Gate 21.

The good faith of these transactions has not been challenged. The loans were made upon reasonable terms. The Smiths and Gastineau Contractors made several loans bearing interest at 9%. One loan was made at the prevailing market rate of 17¼%.

At the time the loans were made, A.N.D. was solvent.[9] It was in the same position as the corporation in *Foster*. It needed an infusion of cash to meet its obligations and preserve its assets. *Foster*, 325 P.2d at 762.

From the foregoing, it is clear that the loans made by Smith and Gastineau Contractors are valid. The loans made by Merdes are valid under the same criteria. A.N.D. could retire the secured debt held by its director-creditors, and the trial court did not err in granting summary judgment to the Smiths, Gastineau Contractors and Merdes.

Hanson was later included in the trial court's grant of summary judgment. The trial court correctly observed that payment of the amounts due Hanson was necessary in order for A.N.D. to complete the sale of Gate 21 to Wise. Her secured interest had to be cleared in order to have a marketable title.

■ Contrary to Robson and Lowell's assertions, AS 10.05.216 does not compel reversal of the trial court. Assuming that payments to the directors were distributions, the statute does not apply in this case.[10]

AS 10.05.216(c) requires that the corporation be liquidated. Here, the corporation was not liquidated either *de jure* or *de facto*. The directors, as secured creditors, received cash and notes from the sale to Wise of the corporation's primary asset. Money from the sale paid to the directors was not a repayment of capital contributions, but was payment of the loans made to A.N.D.[11]

Moreover, AS 10.05.216(c) creates liability when "adequate provision for all known debts, obligations, and liabilities of the corporation" are not provided for. Here, the directors paid all known debts, obligations

---

8. An insolvent corporation may prefer a director's loan if the director is a bona fide creditor. *Fletcher, supra* § 7470.

9. A.N.D. was not insolvent when the loans to the directors were secured; Robson and Lowell contend that by paying these loans A.N.D. became insolvent.

10. The trial court held that the payments made here were not distributions.

11. Robson and Lowell conceded that these were *bona fide* transfers to the directors.

and liabilities that existed in 1982. When the gate was sold in 1982, the transaction was "run through Transamerica" to assure that the title was clear of all known obligations. Although A.N.D. was aware of Robson and Lowell's position regarding the rent overpayment, A.N.D. consistently denied any liability for it. Robson and Lowell did not become judgment creditors of A.N.D. until after the proceeds of the sale had been disbursed.

Finally, public policy favors affirming the trial court in this case. As observed by Fletcher, good faith loans to a corporation by its directors should be valid in order to assist corporate growth. *Fletcher, supra* p. 8, § 7470. A corporation in A.N.D.'s position needs to be able to rely on those most interested in its survival. Directors and shareholders may be the only persons willing to assist the corporation in such a position. Here, the assistance given A.N.D. was used to preserve A.N.D.'s assets by paying its obligations, including those held by Robson and Lowell.

### III. CONCLUSION

Based on the foregoing we AFFIRM the trial court's grant of summary judgment.