351 So.2d 1224 (1977)
Donald H. McGREGOR, Individually and as administrator of the estate of his minor son, Robert T. McGregor
v.
UNITED FILM CORPORATION et al.
No. 11088.
Court of Appeal of Louisiana, First Circuit.
September 19, 1977.
Rehearing Denied November 21, 1977.
*1226 Joseph A. Gladney, Baton Rouge, of counsel for Donald H. McGregor, plaintiff-appellant.
Charles R. Moore, Baton Rouge, of counsel for Indv., etc., plaintiff-appellant.
Neil H. Mixon, Jr., Baton Rouge, of counsel for United Film, Telefilms & Anthony Favaro, defendants-appellees.
William N. Faller, Baton Rouge, of counsel for Guaranty Corp. and Guaranty Bond & Finance Corp., defendants-appellees.
William A. Norfolk, Baton Rouge, of counsel for Guaranty Broadcasting Corp. and The Travelers Ins. Co., defendants-appellees.
Before LANDRY, COLE and CLAIBORNE, JJ.
CLAIBORNE, Judge.
This is a workmen's compensation claim brought by Donald H. McGregor individually and on behalf of his minor son, Robert T. McGregor, who was seriously injured in an automobile accident on September 14, 1968. After young McGregor reached the age of majority he was substituted as a party plaintiff insofar as his personal claims were concerned.
In the early morning hours on that day, Robert McGregor was traveling alone from Hammond, Louisiana to Baton Rouge, in an automobile owned by the Guaranty Broadcasting Company, when the vehicle, for unexplained reasons, overturned in a ditch. Prior to the accident he had delivered, in connection with his employment, motion picture film which had been processed during the night by United Film Corporation employees.
As a result of this accident, the plaintiff sustained serious back injuries requiring surgery and an extended period of convalescence. Liberty Universal Insurance Company, the workmen's compensation insurer of United Film, began paying the statutory weekly benefits and did so for 98 weeks, in addition to certain medical expenses; however, it then became insolvent and has been placed in liquidation. After the accident, Telefilms, Inc. also contributed some financial assistance to the claimant during his recovery period.
This litigation began shortly after the insolvency of Liberty Universal became known. Made defendants on varying theories of responsibility are United Film and its principal shareholder, Anthony H. Favaro, Telefilms, Guaranty Broadcasting Corporation, Travelers Insurance Company, Guaranty Corporation, Louisiana Insurance Guaranty Association, and Tom I. McFarling, as liquidator of Liberty Universal Insurance Company. The suit as to Louisiana Insurance Guaranty Association was dismissed by summary judgment from which no appeal was taken.
After a lengthy trial, which included additional testimony and evidence on behalf of the defendants taken on reopening of the case for such additional evidence, judgment was rendered awarding the plaintiff total and permanent disability benefits and penalties and attorney's fees against United Film only, the suit being dismissed as to the remaining defendants.
The extent of the plaintiff's disability is the initial question raised on appeal. That issue is the subject of considerable controversy and is not free from difficulty. At the trial, Dr. F. C. McMains, an orthopedic surgeon who treated McGregor, testified that he performed a laminectomy and spinal fusion to correct plaintiff's back injuries but as a result of these injuries, there was a permanent residual disability of 50 per cent, *1227 and that driving an automobile for any sustained period of time would cause McGregor pain and discomfort. Dr. Thomas B. Flynn, a neurosurgeon who also treated the plaintiff, agreed with that conclusion.
The issue was complicated by certain conflicting statements made by the plaintiff in connection with litigation pending in his behalf in California. As a result of a subsequent fall in 1972 on a cruise ship on which he was employed, a suit captioned "Robert McGregor v. Pacific Far East Line, Inc." was filed in the United States District Court for the Northern District of California. Certain statements made by him in connection with that litigation are in conflict with his testimony here. More particularly, he testified at length in the trial of the instant case as to the continued physical difficulties resulting from the automobile accident and yet he made several assertions incidental to the California suit which indicated that he had no residual problems whatsoever from the accident in Louisiana.
The trial court considered this conflict at length in its thorough and well-reasoned opinion and concluded that the plaintiff was totally and permanently disabled under our workmen's compensation statute. In that regard, the Court observed:
" . . . Notwithstanding the inconsistencies and prevarications in McGregor's own testimony, and despite his alleged contrary position taken in out-of-state litigation, the medical testimony establishes that plaintiff is totally and permanently disabled under the Louisiana Workmen's Compensation Act. . . ."
We are persuaded that that conclusion should not be disturbed. It is the function of the trier of facts to ascertain the truth from all the evidence before it. Naturally, having found that the plaintiff was untruthful the Court was free to reject all or any part of his testimony. The trial judge's findings on the issue of disability are not manifestly erroneous, particularly in view of Dr. McMain's testimony which convincingly establishes the major disability which McGregor still has and which verified that the plaintiff can no longer do that work which he was doing on the night of the accident without pain and discomfort.
The plaintiff contends that we should disregard the corporate status of United Film and render judgment against Favaro personally. The trial judge explored the jurisprudence of this state concerning the "alter ego" theory of responsibility and rejected that argument on the ground that the close relationship between Favaro and United Film, stock transfers subsequent to the accident, and delivery of corporate assets to another corporation (Telefilms) in which Favaro was interested were not motivated by fraud. In the case of Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., 227 So.2d 265 (La.App. 2nd Cir. 1969) which is representative of cases considering this question, the Court noted:
"A general exception to the rule of nonliability of shareholders and officers for corporate obligations is recognized where the shareholder or officer has practiced fraud upon a person through the corporation or upon the corporation itself. LSA-R.S. 12:95.
"Other exceptions to these rules of nonliability of a shareholder for corporate debts have been recognized where the stockholder is the alter ego of the corporation. For the doctrine of an alter ego to apply, it must be shown that the stockholder whose individual and personal liability for a corporate debt is sought disregarding the entity of the corporation and, thus, made the corporation a mere agency for the transaction of his own private business. Thus, the separate individualities of the corporation and its stockholders must have ceased to exist. Brown v. Benton Creosoting Co., Inc., 147 So.2d 89 (La.App. 2d Cir. 1962cert. denied).
"The doctrine of alter ego does not create assets in a corporation but it simply fastens liability on an individual who uses the corporation merely as an instrumentality in conducting his own personal business. Liability in such instances springs from fraud perpetrated not necessarily on the corporation itself but upon *1228 third persons dealing with the corporation. Shreveport Sash and Door Company v. Ray, 159 So.2d 434, 437 (La.App. 2d Cir. 1963). . . .
"The fact that one owns a majority of stock in a corporation does not of itself make him liable for the corporate debts. So long as the corporate existence is maintained, immunity from liability of even a sole stockholder is the same as if there are many stockholders. Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602 (1929); Johnson v. Kinchen, 160 So.2d 296 (La.App. 1st Cir. 1964); 18 C.J.S. Corporations §§ 580, 581, pp. 1306-1308. Except under circumstances whereby a shareholder becomes individually liable for corporate debts through fraud, deceit, or ill practices, the shareholder is within his rights to limit his obligation by the amount of and to the extent of his subscription for capital stock. He may properly say, `Thus far I will go but no furtherI will risk the amount paid for my stock, but no more.'" (emphasis added).
The plaintiff primarily relies upon an agreement of January 14, 1969, in which Favaro bought out the interest of Guaranty Bond & Finance Company, Inc., in United Film. Lengthy documentation of other corporate business dealings between United Film and the Guaranty Group was also introduced by the plaintiff. None of the evidence indicates that Favaro used the corporate entity for his personal affairs at the time of the accident nor is there any proof of fraudulent conduct on the part of the shareholders. To the contrary, the buy-sell agreement was entered into at a time when McGregor was being paid compensation benefits which he continued to receive until July 31, 1970. There is no allegation or proof of fraud as to Favaro. Therefore, the reservation of rights of action for fraud contained in LSA-R.S. 12:95 is inapplicable.
Plaintiff contends, however, that Favaro is liable under the provisions of LSA-R.S. 12:93 D, as a stockholder who has received unlawful dividends or other unlawful distribution of assets. The facts in this regard are that subsequent to the accident but prior to the financial failure of Liberty, Guaranty Corporation, majority stockholder of United Film, entered into the contract with Favaro, the minority stockholder, whereby the latter purchased all of the stock owned by Guaranty Corporation in United Film for the price of $40,000. Favaro delivered his promissory note for the purchase price and pledged the stock to the seller to secure the debt. By agreement United Film continued to process film for Guaranty Broadcasting Corporation, a solely owned subsidiary of Guaranty Corporation, and all sums due to United Film for such services were paid by Guaranty Broadcasting Corporation to Guaranty Corporation in payment of Favaro's note, which was eventually paid in full. In effect, therefore, the rights and credits of United Film Corporation were diverted and distributed to its only stockholder. United Film was eventually allowed to become dormant and was so declared formally by resolution of its board. Such a distribution of corporate assets was unlawful, and rendered Favaro liable to the creditors of United Film "in an amount not exceeding the amount so received by him" under the provisions of LSA-R.S. 12:93 D. It may be argued that the action of creditors under LSA-R.S. 12:93 D does not apply to unliquidated claims, and therefore, that such an action cannot be cumulated with a suit for workmen's compensation. However, the statute makes no distinction between liquidated and unliquidated debts, and where the law does not distinguish, courts of law ought not to distinguish. A workmen's compensation claimant or tort claimant is a creditor although his claim may not have been reduced to judgment. It is well settled that a money judgment does not create a debt; it only recognizes the obligation and makes it executory. Bailey v. Louisiana & N. W. R. Co., 159 La. 576, 105 So. 626 (La.1925); Lalanne v. Payne, 42 La.Ann. 152, 7 So. 481 (La.1890). The general definition of a creditor and a debtor is found in LSA-C.C. Art. 2132:
He who is bound to do, or not to do, or to give, is indifferently called the obligor, or *1229 the debtor; and he to whom the obligation is made is in like manner without distinction called the obligee or the creditor. (Emphasis added).
As a workmen's compensation claimant, plaintiff was a creditor of the corporation (United Film), and as a shareholder in receipt of an unlawful distribution of corporate assets, Favaro is liable with his corporation to the plaintiff to the extent of the unlawful distribution received. This liability is further limited by the peremption provisions of the statute, under which the action to enforce the liability must be brought within two years from which the unlawful distribution was received. Favaro was not joined as a party defendant until October 30, 1973. Therefore any distributions unlawfully received by him prior to October 30, 1971, would be perempted. A total of nine payments were received by Favaro after that date (from December 7, 1971 to September 12, 1972) for a total of $17,002.15.
The plaintiff asserted the following case against Guaranty:
"Plaintiff hereby makes Guaranty Bond and Finance Company, Inc., now known as Guaranty Corporation, an additional party defendant herein, and further alleges that because of the facts alleged hereinabove, as well as the facts alleged hereinbelow, the court should disregard the corporate entity of United and `pierce the veil' of corporateness of United and hold its principal stockholder, Guaranty Bond and Finance Company, Inc., now known as Guaranty Corporation, liable to plaintiff for all sums sued for herein on the additional grounds that as of September 14, 1968:
1. Guaranty, the parent corporation, owned approximately seventy-five (75%) per cent of the stock of United;
2. Guaranty financed United frequently by making advances of funds to United to meet its routine business expenses;
3. United had grossly inadequate capital with which to meet its foreseeable obligations;
4. United had very little business with persons other than its parent corporation, Guaranty;
5. Guaranty, the parent corporation, used the property, business and employees of the subsidiary, United, as its own;
6. The officers and directors of United did not operate United by independent action in the interest of United, but rather took their orders from the parent corporation, Guaranty, in Guaranty's interest;
7. The financial books and records of United were kept by and commingled with the books and records of the parent, Guaranty;
8. There existed such a unity of interest and ownership that the individuality or separateness of United and Guaranty had ceased, and for all practical purposes they were and should be treated as one corporate entity;
9. United was the alter ego of Guaranty."
As previously discussed courts will not strip a principal stockholder of the shield of personal immunity from liability for corporate obligations except on the necessary showing of fraud or other misconduct. Sampay v. Davis, 342 So.2d 1186 (La.App. 1st Cir. 1977). Limited or inadequate capitalization does not of itself indicate fraud or raise any presumption of fraud, deceit or ill practices on the part of a stockholder. Sampay v. Davis, supra; Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., 227 So.2d 265 (La.App. 2nd Cir. 1969). No fraud was alleged or proven with respect to either of the Guaranty Corporations.
Plaintiff further seeks recovery against the solvent defendants by alleging that at all pertinent times he "was an employee of and was under the joint control of all defendants. . . ." There is absolutely no proof that McGregor was ever employed by any of the Guaranty corporations.
The facts as to Telefilms require close scrutiny. United Film and Telefilms were separate corporations. At the time of the accident Favaro owned one-fourth interest *1230 in the former while Guaranty owned seventy-five per cent (which it subsequently sold to Favaro as previously discussed). Favaro owned one-third of the stock of Telefilms, in which the Guaranty corporations owned no stock. Both corporations had their offices in a building belonging to Favaro, and Favaro apparently ran the day-to-day operations of both companies. United Film was a film processing company, while Telefilms, at that time, was engaged in filming athletic events. (At a subsequent time as United Film became less active because of a lack of equipment for color processing, Telefilms also undertook to process films). Corporate records were separately maintained. Significantly, however, their personnel and business ventures were closely interrelated. McGregor sometimes worked for one corporation and sometimes for the other. His immediate superior and paymaster in both cases was Favaro. His duties involved driving to an athletic event, helping to film the game, returning with the film for processing, and then delivering the processed film to the customer. According to the corporate arrangement, part of this workthe filmingwas for one corporation, and the other partthe delivery of processed filmwas for another. Plaintiff received one payment for his work, and apparently no effort was made to allocate his wages. He believed United Film and Telefilms were identical. Telefilms provided him with a hospital bed at home after his injury, while United Film's insurer paid workmen's compensation.
On the evening of the accident, McGregor and Morris Lucia, a principal stockholder in Telefilms, had gone to New Orleans where they filmed a high school football game. They returned to the joint corporate offices at 1738 Wooddale Boulevard via Hammond where they picked up other film to be processed that night. The film was developed by employees of United Film, and at 2:30 a. m. plaintiff was sent back to Hammond to make delivery of the processed film. The accident occurred on the return trip. The entire operation was in essence a joint venture of United Film and Telefilms financially beneficial to both corporations which shared their employees. The operations were totally interdependent since the taking of films was useless to their customers unless the films were subsequently processed and delivered. Evidence indicated that immediate processing and prompt delivery were essential to the service provided.
In Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518 (La.App. 3rd Cir. 1965) the court cited with approval the following quotation from Malone, Workmen's Compensation Law (1951), Section 58, pp. 66-67:
"Where `the employee is subject to the joint control of several employers at the same time and for the same work, he is entitled, if injured, to subject them all to his compensation claims. * * * If the work being done at the time of the accident was in furtherance of a joint enterprise shared by all employers, so that each of them had a direct financial interest in the entire job, we are presented with a case of partnership or joint enterprise liability. * * * It is not necessary, that each partner or joint venturer personally control the work of the injured employee. It is sufficient that they are engaged in a common enterprise that contemplates the employment and control of the claimant by one of the interested parties for the benefit of all. * * *'." (Emphasis added by this Court).
See also Guilbeau v. Liberty Mutual Insurance Company, 324 So.2d 571 (La.App. 1st Cir. 1975) affirmed on this point in 338 So.2d 600 (La.1976).
As a result of the joint enterprise both employers are liable to the employee for workmen's compensation.
The district court was correct in assessing penalties and attorneys' fees with the following explanation:
"The court finds that plaintiff is entitled to the attorneys' fees and penalties provided for in LSA-R.S. 23:1201.2, because at the time of the discontinuance, the employer failed to pay for no better reason than the fact that his compensation insurer became insolvent. The failure to continue payments within a reasonable time after notice was without probable cause on the *1231 part of" the employer. The court properly rejected consideration of the second accident as justification for nonresumption of payments in view of the fact that the employer had no knowledge of the second accident and was not motivated thereby in suspending payments.
The judgment of the district court is affirmed insofar as it awards plaintiff total and permanent workmen's compensation benefits, subject to credit for compensation previously paid, together with penalties and attorneys' fees, and medical expenses, against United Film. It is reversed insofar as it dismisses the suit as to Telefilms, Inc., and Anthony Favaro individually, which defendants are hereby cast, in solido with United Film, liability of Anthony Favaro being limited to $17,002.15.
It is ordered, adjudged and decreed that the judgment of the trial court be amended to include judgment against defendants United Film, Telefilms, Inc. and Anthony Favaro in solido, liability of Anthony Favaro individually being limited to the sum of $17,002.15. All costs to be assessed against defendant United Film, Telefilms, Inc. and Anthony Favaro. The judgment of the district court dismissing the suit as to all other defendants is affirmed.
Affirmed in part, reversed in part and rendered.