370 So.2d 651 (1979)
Susan PETERS, wife of/and John Downey
v.
CROCHET HOMES, INC., Raymond Crochet, Sr., and Raymond Crochet, Jr.
No. 9995.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
O'Keefe, O'Keefe & Berrigan, E. John Litchfield, New Orleans, for plaintiffs-appellants.
Robert S. Taylerson, New Orleans, for defendants-appellees.
Before LEMMON, GULOTTA and STOULIG, JJ.
*652 STOULIG, Judge.
Plaintiffs, Susan Peters, wife of/and John Downey, as judgment creditors of Crochet Homes, Inc., filed suit against the corporation, Raymond Crochet, Sr., and Raymond Crochet, Jr., for declaratory relief decreeing that a transfer of a corporate asset to Raymond, Jr., was an unlawful distribution to a shareholder rendering the transferee individually liable for the value of the arrest. From a judgment dismissing their suit, plaintiffs have appealed.
Plaintiffs' claim rests on R.S. 12:93(D), which provides:
"Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him. An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit."
On January 23, 1976, plaintiffs filed suit against Crochet Homes, Inc., for breaching a home construction contract through inept and unsatisfactory workmanship. The case was tried September 29, 1976 and a judgment awarding plaintiffs $2,719 was rendered December 3, 1976.
The asset allegedly conveyed by Crochet Homes, Inc., to Raymond, Jr., to the prejudice of plaintiffs was one 1973 Chevrolet pickup truck. Title is now in the name of Crochet, Inc.[1] What is interesting to note is that the title reflects Crochet, Inc., acquired the truck on September 27, 1976; however its title was not issued until February 9, 1977. Stated another way, the transfer is dated two days before the trial; however Crochet, Inc.'s title was not effected until two months after judgment was rendered.
Both Crochet Homes, Inc., and Crochet, Inc., are vehicles through which Raymond, Jr., either operated or presently operates a business from which he alone derives revenue. Although Raymond, Sr., was a shareholder in Crochet Homes, Inc., the record indicates that only Raymond, Jr., derived income therefrom. Incorporated for the purpose of home construction, Crochet Homes, Inc., was only actively used long enough to build the Downey home, which turned out to be a fiasco. Crochet, Sr., testified with this result it seemed pointless to continue in business. At the time of the trial Crochet, Inc., was in the business of house remodeling.
When the date of transfer of the vehicle from Crochet Homes, Inc. to Raymond, Jr., individually, or to Crochet, Inc., are compared with the dates of trial and judgment respectively, the inference is almost inescapable that the purpose of the transaction was to remove an asset of the corporation from the reach of a creditor. And the testimony of both Crochet, Sr., and Crochet, Jr., added no information to satisfactorily explain the transfer of the only corporate assets to Crochet, Inc.
Raymond, Sr., testified that in 1975 he transferred all his stock and the truck to his son Raymond, Jr., in consideration of the cancellation of a debt he owed to his son. The nature of the debt was not explained nor was any documentary evidence offered to prove its existence. In fact he later testified that he received no compensation for the transfer of the stock. Further Raymond, Sr., failed to clarify by what right he used a corporate asset (the equity in the truck) to pay a personal debt to his son if one actually existed.
Raymond, Jr., conversely testified that the truck was acquired in April 1976 when the younger Crochet owned all the stock in Crochet Homes, Inc. He testified the truck was not transferred from Crochet Homes, Inc., directly to Crochet, Inc., but rather it was conveyed by Crochet Homes, Inc., to *653 him individually[2] and then to Crochet, Inc. He explained the corporation owed him $344 for labor and materials and he assumed a bank loan of $1,900. Again there was no documentary evidence tendered to establish the debt, the act of transfer, or the payments made on the assumed bank loan. The testimony of the individual defendants is contradictory and uncorroborated by records that should be available to them.
Viewed as a whole, the conclusion is inescapable that the transfer of the truck is a simulated transaction. In Dare v. Myrick, 168 So.2d 845 (La.App. 2d Cir. 1964), the court pointed out that one circumstance creating an inference of simulation is the continued possession by the vendor of the article transferred.
We conclude the truck, transferred on September 26, 1976 two days before trial and registered after the judgment, was a simulated transaction and an unlawful distribution of corporate property for which the transferee shareholder is individually liable. The value of the asset sold was established by Raymond, Jr., at $2,200 and he is liable individually to plaintiffs in this amount.
Crochet, Jr., is liable either as a shareholder who has received an unlawful distribution under R.S. 12:93(D) or under the alter ego exception to the rule that stockholders of corporations are not liable for individual debts. Both bases were discussed in McGregor v. United Film Corp., 351 So.2d 1224 (La.App. 1st Cir. 1977). Quoting Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., 221 So.2d 265 (La.App. 2d Cir. 1969), the McGregor decision emphasized:
"`A general exception to the rule of nonliability of shareholders and officers for corporate obligations is recognized where the shareholder or officer has practiced fraud upon a person through the corporation or upon the corporation itself. LSA-R.S. 12:95.
"`Other exceptions to these rules of nonliability of a shareholder for corporate debts have been recognized where the stockholder is the alter ego of the corporation. For the doctrine of an alter ego to apply, it must be shown that the stockholder whose individual and personal liability for a corporate debt is sought disregarding the entity of the corporation and, thus, made the corporation a mere agency for the transaction of his own private business. Thus, the separate individualities of the corporation and its stockholders must have ceased to exist. Brown v. Benton Creosoting Co., Inc., 147 So.2d 89 (La.App. 2d Cir. 1962-cert. denied).
"`The doctrine of alter ego does not create assets in a corporation but it simply fastens liability on an individual who uses the corporation merely as an instrumentality in conducting his own personal business. Liability in such instances springs from fraud perpetrated not necessarily on the corporation itself but upon third persons dealing with the corporation. Shreveport Sash and Door Company v. Ray, 159 So.2d 434, 437 (La.App. 2d Cir. 1963). . . .
"`The fact that one owns a majority of stock in a corporation does not of itself make him liable for the corporate debts. So long as the corporate existence is maintained, immunity from liability of even a sole stockholder is the same as if there are many stockholders. Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602 (1929); Johnson v. Kinchen, 160 So.2d 296 (La.App. 1st Cir. 1964); 18 C.J.S. Corporations §§ 580, 581, pp. 1306-1308. Except under circumstances whereby a shareholder becomes individually liable for corporate debts through fraud, deceit, or ill practices, the shareholder is within his rights to limit his obligation by the amount of and to the extent of his subscription for capital stock. He may properly say, "Thus far I *654 will go but no furtherI will risk the amount paid for my stock, but no more."' (emphasis added)." 351 So.2d at 1227-28.
For the reasons assigned the judgment appealed from is reversed and it is now declared that the transfer of the truck from Crochet Homes, Inc., to Raymond Crochet, Jr., or his alter ego, Crochet, Inc., was an unlawful distribution of corporate assets. It is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Susan Peters, wife of/and John Downey, and against defendant Raymond Crochet, Jr., in the sum of $2,200, with legal interest from judicial demand and all costs of this litigation.
REVERSED AND RENDERED.
NOTES
[1] The corporation Crochet, Inc., was formed by Raymond Crochet, Jr., some time after Crochet Homes, Inc. became defunct.
[2] Based upon his own testimony Raymond, Jr., executed the transfer of the truck in the capacity of both transferor and transferee. He acted on behalf of the corporation without the customary corporate authorization, which is indicative of the fact that he was conducting the affairs of the corporation as a sole proprietorship.