hLOBRANO, Judge.
The issue in this appeal is whether, in the absence of fraud, the payment by a corporation to a former shareholder of a promissory note given as consideration for the redemption of that shareholder’s stock, and which payment renders the corporation insolvent, constitutes an illegal distribution of assets imposing liability on the former shareholder to the corporation’s creditors.
The facts of this case are undisputed. Pri- or to February, 1986 All Pro Security, Inc. (All-Pro) was owned by three shareholders: Louis Sepulveda, Henry Burkhardt and Frank Clement. On February 6, 1986 Clement and Burkhardt sold all of their shares to All-Pro for the price of $300,000.00 to each. Frank Clement, the defendant herein, received $45,000.00 in cash plus a promissory note bearing interest at 9.13% for the balance. A portion of the Burkhardt sales price was also represented by a promissory note. Sepulveda was the remaining All-Pro shareholder.
On November 29, 1989 plaintiff, Security Center Protection Services, (Security Center) entered into a monitoring contract with All-Pro whereby All-Pro would provide a minimum number of accounts.[1] On September 27, 1990 All-Pro |2soId its assets to Alert Income Partners IV, Ltd. for the sum of $450,000.00. On November 7, 1990 All-Pro used the sale proceeds to pay Clement $169,-895.00, the discounted value of his promissory note. Burkhardt was paid a total of $110,-000.00, the balance owed to him by All-Pro.
Because All-Pro withdrew its accounts from Security Center in October of 1990, Security Center filed suit for breach of contract, as well as the balance due on various open accounts that were unpaid. As a result, a judgment was rendered against All-Pro and Sepulveda in favor of Security Center on July 29, 1992 in the total sum of $175,220.48, plus interest and costs.[2] That judgment was not appealed.[3] Unable to satisfy its judgment against All-Pro, Security Center filed the instant suit against Clement and Burk-hardt seeking recovery of the payments made to them by All-Pro after receipt of the proceeds from the sale to Alert. Security Center’s claims are based on: (1) the provisions of La. R.S. 12:55(A) and La. R.S. 12:93(D) which provide for liability because of unlawful distribution to shareholders, and (2) the provisions of La. C.C. art.2036, et seq., which govern revocatory actions.
Burkhardt settled prior to trial. He executed a consent judgment in the amount of $69,862.25, agreed to file a claim in the Se-pulveda bankruptcy and to assign that claim to Security Center. Judgment was rendered against Clement in the sum of $151,782.84,[4] *808 plus interest and costs. The trial court reasoned that All-Pro’s payment to Clement was an unauthorized distribution of assets and thus | she was liable pursuant to La. R.S. 12:93(D). The court further held that because Burkhardt and Clement were not soli-dary obligors, Clement was not entitled to a direct credit for the Burkhardt settlement.
Clement perfects this appeal. He argues that a strict interpretation of La. R.S. 12:93(D) requires a reversal because he was not a shareholder at the time of the alleged unlawful distribution. He also urges that there was no unlawful distribution of assets by All-Pro. Alternatively, he asserts that the court erred in failing to give him credit for the Burkhardt settlement and for other payments received by Security Center which reduced All-Pro’s indebtedness. For the following reasons, we amend and affirm.

CLEMENT’S LIABILITY:

Louisiana Revised Statute 12:55(A) prohibits a corporation from purchasing or redeeming its own shares when it is insolvent, or when the purchase or redemption would render it insolvent.[5] One consequence of the unlawful distribution proscribed by the statute is imposition of liability for the corporation’s debts on the shareholder receiving the distribution up to the amount of that distribution. Louisiana Revised Statute 12:93(D) specifically provides, in pertinent part, “Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the ^corporation, or to both, in an amount not exceeding the amount so received by him.”[6]
Plaintiff urges strict statutory interpretation and specifically argues that the November, 1990 payment to him by All-Pro cannot be violative of La. R.S. 12:93(D) because he was not a shareholder at the time of the payment and that the payment was not unlawful because it was made pursuant to a legitimate promissory note. Plaintiff further notes that, in the absence of any fraud, either alleged or proved, the Louisiana jurisprudence has failed to recognize recovery under the statute. Security Center counters those arguments with citations to various cases,[7] many of which are distinguishable because they do involve a finding of fraud or deceit. It argues, however, that the protection of corporate creditors is the legislative intent which requires application of the two statutes at issue in this case. We agree with this argument.
Undoubtedly, one purpose of La. R.S. 12:55 is to prevent shareholders from depleting corporate assets to the detriment of the corporation’s creditors.[8] And, the intent of La. R.S. 12:93(D) is to impose personal liability for the corporation’s debts on those shareholders who receive an unlawful distribution of assets. Thus, it is fair to say that the legislature intended to protect creditors from certain corporate actions which benefited some or all of the shareholders to the creditors’ detriment. Thus, in the simplest situation, where a ^corporation depletes its resources in redeeming its stock, the shareholder receiving those resources is liable to the creditors who are not paid, up to the amount received by the shareholder.
However, this case is not that simple. Here, payment for the stock transfer was made on an installment basis. Thus says Clement, it was neither an illegal distribution *809 pursuant to La. R.S. 12:55 nor was it a payment to a “shareholder” under La. R.S. 12:93(D).[9] We disagree.
First, we are satisfied that the November, 1990 payment to Clement was an unlawful distribution. His assertion that it was merely the payment of a promissory note by All-Pro lacks merit. The triggering mechanism of La. R.S. 12:55 is corporate insolvency caused by the purchase or redemption of its own stock. The statute does not specify that the payment must be coincidental with the transfer of the stock ownership. Considerations of economic reality and corporate flexibility in different modes of financing such transactions should not negate the intent of La. R.S. 12:55. Contrary thinking would erode the statute’s purpose of protecting corporate creditors. We hold that the payment of the promissory note given to Clement as consideration for the purchase of his stock was an unlawful distribution of assets when it caused corporate insolvency.
Clement further argues, however, that he cannot be liable under La. R.S. 12:93(D) because when the November 1990 distribution was made he was not a shareholder. In support he cites Civil Code article 2456 which provides that ownership is transferred once price and object are agreed upon, even though the price has not yet been paid. Clement relies on the “restrictive language” of AMP Service Corp. v. Richard, 419 So.2d 911 (La.1982) in support of this interpretation of the statute. We are not persuaded by that argument.
Louisiana does not recognize the common law conditional sales contract of movables wherein ownership is not transferred until the purchase price is paid. Haymon v. Holliday, 405 So.2d 1304 (La.App. 3rd Cir.1981). However, the fact that Clement’s stock ownership ceased in February of 1986 does not convince us that the intent of La. R.S. 12:93(D) should be ignored. At the time of the November 1990 distribution, Clement was the owner of the promissory note given as consideration for his stock, and he retained a vendor’s privilege on the stock even though title remained with All-Pro. La. C.C. art. 3227. Furthermore, we note that paragraph IV of the stock redemption agreement obligates All-Pro to pay Clement in the event All-Pro is sold. In our opinion, Clement had sufficient indicia of ownership so as to justify application of La. R.S. 12:93(D). A contrary ruling would not only ignore the economic realties of a stock redemption, but would defeat the intent and purpose of the statute, which is creditor protection. It would simply make no sense to impose liability on the shareholder who receives an immediate payment for his stock, but not on the shareholder who receives payment in installments. Making such a distinction would undermine the statute. It is not the transfer of stock ownership that prejudices the rights of the creditors, but corporate insolvency caused by payments for the stock transfer.
Finally, Clement argues that there is no evidence of fraud in this case, nor has fraud been asserted by Security Center, therefore the jurisprudence cited by Security Center is not applicable. Our response to that assertion is simply that neither La. R.S. 12:55(A) nor La. R.S. 12:93(D) requires proof of fraud. The ^absence of fraud in this ease is not controlling. We hold that where a corporation is rendered insolvent by paying to the former shareholder the balance owed for the redemption of his stock, La. R.S. 12:93(D) is applicable.

CREDIT FOR BURKHARDT’S SETTLEMENT AND OTHER PAYMENTS:

Clement argues the trial court erred by failing to give him credit for the settlement made by Burkhardt. Clement claims he is entitled to reduce his judgment by $69,862.25, the amount of Burkhardt’s consent judgment. Clement refers us to the computations made by Security Center in arriving at the Burkhardt settlement figure as instructive.[10] The trial judge rejected *810 Clement’s claim by holding that Burkhardt and Clement are not solidary obligors and thus no settlement credits are due directly to Clement. Technically, that ruling may be correct in the sense that any credits for the Burkhardt settlement are not attributable directly to Clement. However, for the following reasons, we find that the compromise with Burkhardt reduces the judgment against All-Pro and to that extent Clement receives the credit, indirectly.
Security Center admits that it cannot recover an amount greater than what is owed by All-Pro. Its judgment against All-Pro, when rendered on July 29,1992, awarded the principal sum of $157,108.32 plus $18,112.16 in attorney fees. Clement is obligated to return as much of the distribution received by him that is necessary to satisfy that judgment.[11] Thus any payments on the All-Pro judgment 18by anyone are to Clement’s benefit to the extent that the amount of the All-Pro judgment is reduced.
Security Center argues that since Burk-hardt did not actually pay the compromise judgment of $69,862.25, there should be no reduction of the All-Pro judgment. We disagree. The obligations of Burkhardt and Clement to satisfy the All-Pro debt are in the nature of a legal suretyship. La. C.C. art. 3043. That is, their obligation is accessory to the principal obligation owed by All-Pro. When Security Center agreed to accept $69,862.25 from Burkhardt, the principal obligation was extinguished by that amount, and thus Clement’s obligation as a surety must be reduced accordingly. La. C.C. art. 3059. Thus Clement is responsible only for the remaining balance of the All-Pro judgment.
Accordingly, we reduce the All-Pro judgment by the amount of the Burkhardt settlement, $10,000.00 received from Sepulveda and $2,041.07 received from the bankruptcy trustee. The judgment against Clement is amended to reflect those reductions of the principal debt.
AMENDED, AND AS AMENDED, AFFIRMED.

. Security systems previously monitored by All-Pro would now be monitored by Security Center. The term of the contract was two years.

. Those proceedings bear docket No. 91-2048 of the Civil District Court of Orleans Parish. The $175,270.48 includes attorney fees of $18,112.16.

. Sepulveda filed for voluntary bankruptcy under Chapter 7 on September 24, 1992.

.The All-Pro payment to Clement was $169,-895.00. However, the court reasoned that the $18,112.16 in attorney fees awarded in the July 29, 1992 judgment against All-Pro should be deducted because they were not due at the time of the distribution to Clement.

. Throughout this opinion we refer to the transaction as either the sale of stock or a redemption of stock. Actually the sale is to the corporation of its own stock which technically is a redemption. However, the basis of Clement’s argument is the transfer of ownership. Thus regardless of whether the transfer is called a sale or a redemption, under either scenario Clement did not legally own the stock at the time of the distribution to him.

. Another consequence of an unlawful distribution is the imposition of liability on the directors and officers. La. R.S. 12:92(D).

. Witco Chemical Co. v. Consolidated Terminals Corp., 546 F.2d 631 (5th Cir.1977); Pasternack v. Louisiana & Arizona Lands, Inc., 254 So.2d 142 (La.App. 3rd Cir.1971); Abraham v. Lake Forest, Inc., 377 So.2d 465 (La.App. 4th Cir.1979), writ denied, 380 So.2d 99; McGregor v. United Film Corp., 351 So.2d 1224 (La.App. 1st Cir.1977), writ denied 353 So.2d 1335 (La.1978).

. In addition to creditors, the statute also protects preferred and common shareholders from director action aimed at creating an asset distribution preference.

. Clement does not argue All-Pro’s solvency in November of 1990. The evidence is uncontra-dicted that once Clement and Burkhardt’s notes were paid, the corporation was insolvent and unable to pay its creditors. In the same view, it is undisputed that All-Pro was solvent in February, 1986 when the agreement to redeem the stock was executed.

. Simply, Security Center took Burkhardt’s percentage of the total payment by All-Pro and multiplied it by the principal amount of Security *810 Center's judgment and used that figure for settlement.

. The trial court ruled that Clement was not obligated to pay the attorney fees since they were incurred after the distribution to him. Security has not appealed that portion of the judgment.