hDECUIR, Judge.
Dannie Temple, a truck driver working in the logging industry, filed this suit for worker’s compensation benefits against Huey Wilson Trucking Company, Inc. and Load Right Timber Sales, Inc. for injuries resulting from an accident which occurred on March 30,1994. The workers’ compensation judge found the defendants liable for benefits in solido and rendered judgment accordingly.
In this appeal, Wilson Trucking and Load Right dispute Temple’s employment status and urge this court to reverse the workers’ compensation judge’s finding that they are the joint employers of the plaintiff. Wilson Trucking argues that Load Right and/or third party defendant, Thunderbolt Tie and Lumber Co., Inc., are the employers of Temple and should be solely responsible for workers’ compensation benefits. Load Right contends that it is merely the statutory employer of Temple, and as such, is entitled to indemnity and contribution from the direct employer, Wilson | ¡/Trucking. No formal pleading seeking indemnity and contribution has been filed at this time. Thunderbolt argues that the workers’ compensation judge was correct in finding that it is not an employer of Temple.
Temple received benefits from 1994 to 1997 from Wilson’s insurer, and from 1997 through the date of trial from Load Right’s insurer, but sought herein authorization for a discogram, payment of certain medical bills, and penalties and attorney’s fees for the untimely payment of benefits. The trial court denied these claims, and Temple has not appealed; therefore, these issues are not before us and will not be addressed.
The issues which we are called upon to resolve herein are whether Temple made false statements and misrepresentations in violation of La.R.S. 23:1208 and whether Temple was employed by Load Right, Wilson Trucking, or Thunderbolt. In order to resolve these matters, we quote extensively from the reasons for judgment prepared by the workers’ compensation judge, beginning with her description of the factual background of this logging operation:
Mr. Temple, a Louisiana resident, was a driver or hauler of timber. He was a sole proprietor temporarily working in Texas at the time of his accident. Wilson Trucking is a small company owned by Huey Wilson that had approximately four employees, including Mr. Wilson, working on this same set or area of land, cutting and hauling wood. Mr. McCleod was a part owner and manager of several companies, including Load Right and Thunderbolt. Load Right had organized, set up, and supervised this set or area of wood, along with several other areas in Texas. Thunderbolt operated a wood mill in Texas.
Mr. Temple testified that on the day of his accident he was in Texas hauling logs for Huey Wilson and Load Right. He was paid by checks from Thunderbolt and received Form 1099s for income tax purposes in 1991 and 1994 reflecting that Thunderbolt (but not Wilson or Load Right) had paid him wages. Mr. Temple stated that he lined up this job by telephone conversation with Mr. McCleod. They spoke regarding work that Mr. McCleod had available in Texas, and Mr. McCleod acknowledged that he had a job that would probably be short. IjjThere was no written contract, and no specific wages were discussed. Mr. Temple drove his own truck to Texas and used a trailer owned by Mr. McCleod. On the job in Texas he drove trucks owned by Wilson, [as well as his own truck] and he hauled logs for cutters and contractors other than Wilson. Each morning, he and other contractors would show up at the site and get work assigned to them by Load Right’s foreman. Mr. Temple would go to the directed set, have logs loaded and then *931 haul the logs to the designated mill. He would get a ticket at the mill for the volume of logs he brought in. Those tickets were then turned in to Load Right, and Load Right would calculate his pay. Mr. Temple was allowed to charge gas and certain other items on Load Right accounts, which in most instances were charged against his earnings.
Mr. Wilson testified that he did not specifically discuss a rate of pay with Mr. Temple. When Mr. Wilson anticipated that there was more work than could be handled by Wilson’s daily workers, he would line up extra help the evening before, as with Mr. Temple. Mr. Wilson did not perform pay roll or personnel functions. Load Right used their own insurance agents and office personnel to handle Wilson’s insurance, pay roll, check writing, tax withholding and payments, and other similar administrative functions.
Mr. McCleod testified that he had an interest in several corporations involved in the logging and timber industry. For many years he had insured all of the contractors and their employees. He then changed insurers and had the contractors provide their own insurance. Either he would pay for it and they would reimburse him or he would pay them less, taking into consideration the cost of the insurance that he paid. Generally speaking, he set up the pay roll, personnel, tax, and business documents to minimize his taxes and costs of doing business. He used Wilson as an independent contractor on the Texas job. Load Right negotiated with the mills as to the price being paid for the logs, and he negotiated with his contractors as to the price that would be paid for the logs they cut and hauled. Mr. McCleod was of the opinion that the Form 1099s issued by Load Right to Mr. Temple were wrong, since Wilson actually hired Temple. The pay checks being issued on a Thunderbolt checking account were explained as being for the convenience of Mr. Temple since he was living in Texas and Thunderbolt had a Texas account. As well, he explained that Load Right reimbursed Thunderbolt for these wage payments.
[[Image here]]

False Statements or Representations

It was asserted by Wilson that Mr. Temple made false statements and representations in order to wrongfully receive benefits, such that he had forfeited his right to any further workers’ compensation benefits pursuant to La.R.S. 23:1208. Particularly, Wilson argued that Mr. |4Temple represented to his medical care providers that he was unable to perform certain activities, yet, he was observed and videotaped performing these and other tasks. It was also argued that Mr. Temple testified and made prior statements that he was in great pain and not able to physically do certain tasks or work, contrary to his physician’s findings and objective evidence presented at trial.
In order to conclude that a claimant has forfeited his benefits, the court must find that 1) there is a false statement or representation, 2) it is willfully made, and 3) it is made for the purpose of obtaining or defeating any benefit or payment. La.R.S. 23:1208, being penal in nature, it is to be strictly construed and the words literally read.
The credibility of Mr. Temple leaves much to be desired. The video tape, together with the testimony and the medical evidence, reflects that Mr. Temple exaggerates his pain, symptoms, and inability to perform work tasks. However, such conduct is not sufficient to constitute a violation of La.R.S. 23:1208, as interpreted by the Court of Appeal, Third Circuit.
We agree with the workers’ compensation judge’s conclusions regarding La.R.S. 23:1208. We do not believe Temple’s posi *932 tion in this case constitutes a violation of the statute.
The workers’ compensation judge then described Temple’s employment relationship with Load Right, Wilson Trucking, and Thunderbolt in part as follows:
At the time of his accident, Mr. Temple was performing services on behalf of Wilson. He was hauling wood that had been cut by Wilson. Wilson had direct contact with Mr. Temple and had requested Mr. Temple’s services for that particular day and in that particular location. Wilson admitted in his testimony that he hired and had the right to fire Mr. Temple from his job. As well, Wilson stated that he had his own truck and driver but needed the additional assistance of Mr. Temple on this particular occasion.
Mr. Temple admitted that he had gone to Texas after talking with Mr. McCleod. Mr. Temple hauled for many different people and had not negotiated a particular wage with Wilson. Rather, he was paid “according to the going rate,” being a certain amount for the volume of wood loaded and hauled to the mill. Mr. Temple was free to accept Wilson’s offer to haul, or he could go to other cutters and work for them. In fact, while in Texas he had worked for Wilson, when available, and he had worked on other sets. Neither Wilson nor Load Right showed Mr. Temple on pay roll or employee records. Rather, he was handled as a contract worker and sent a Form 1099.
IsBoth Wilson and Temple were subject to the working conditions and requirements set out by Load Right. Mr. McCleod or Load Right employees provided general supervision of the work being performed, designated the particular work sites, and selected the mills to be delivered to.
The Texas logging operation was set up and controlled by Load Right. Load Right had located and divided up the wood or sets. It then hired various individuals and companies to perform the services and work required to have the wood cut, skidded, loaded, and hauled to the mills. Load Right controlled the location and nature of the work assignments and designated specifications for the wood. As well, Load Right dictated the terms of payment.
After reviewing the evidence contained in the record, we conclude that Load Right and Wilson Trucking are joint employers of Temple, and, as such, are liable in solido for his worker’s compensation benefits. The concept of joint employers was discussed in Kahl v. Baudoin, 449 So.2d 1334 (1984). There, a law enforcement officer was an employee of the Sheriff of St. Mary Parish; however, he also performed some services for the state police and received a portion of his salary from the State. Accordingly, he was found to be jointly employed by the State and the Sheriff for purposes of workers’ compensation death benefits. The Kahl court cited with approval a 1965 case from this circuit which set forth the standard of proof for a joint employment relationship:
It is not necessary that each partner or joint venturer personally control the work of the injured employee. It is sufficient that they are engaged in a common enterprise that contemplates the employment and control of the claimant by one of the interested parties for the benefit of all. Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518, at 529 (La.App. 3 Cir.1965), writ denied, 247 La. 614, 172 So.2d 700, appeal dismissed, 382 U.S. 16, 86 S.Ct. 67, 15 L.Ed.2d 12.
Id. at 1336-7. See also McGregor v. United Film Corp., 351 So.2d 1224 (La.App. 1 Cir.1977), unit denied, 353 So.2d 1335 (La.1978).
The Texas logging operation was a job that required the services of numerous workers, including Wilson Trucking’s crew, independent contractors such as Temple, Land other subcontractors. The set or *933 wooded area Temple was in at the time of his accident was leased by Load Right and assigned to Wilson Trucking for clearing. It was anticipated by both parties that the services of other workers may be needed to finish the job timely. Temple was asked to work on this set when needed. Load Right and Wilson Trucking both exercised some degree of control over Temple. Under these circumstances, we find both employers are liable to Temple for workers’ compensation benefits.
We agree with the workers’ compensation judge’s conclusion that Thunderbolt, the mill to which Temple was delivering his loads, was not an employer of Temple. While it is true that Temple’s paychecks came from Thunderbolt, it is clear that this practice was done at the request of McCleod, a shareholder in both Thunderbolt and Load Right, and for the potential convenience of out of state workers such as Temple.
Likewise, we find no error in the workers’ compensation judge’s denial of Wilson Trucking’s request to submit into evidence 27,000 documents produced in discovery by Load Right.
Finally, we agree with the workers’ compensation judge’s conclusion that neither Load Right nor Wilson Trucking is entitled to indemnity or contribution from the other beyond that which was articulated in the amended judgment of February 9, 1998, that is, that each employer bear the cost of one-half of Temple’s compensation benefits. Costs of this appeal are assessed equally to Load Right and Wilson Trucking.
AFFIRMED.