hDOWNING, J.,
dissents and assigns reasons.
A travesty of law and justice, the majority opinion absolves a corporate liquidator of his high fiduciary duty to a corporate creditor and converts an unlawful distribution into a lawful one by simple transfer of assets from a subsidiary corporation to a parent corporation. As a result, Eagle Pacific Insurance Company (Eagle) is pre-eluded from collecting a lawfully owed contractual obligation and William and Pamela Kelley received a windfall in the amount of $139,433.00 to which they are not entitled. Accordingly, I dissent.
Liquidator Liability
Louisiana Revised Statutes 12:147 B requires notice by registered or certified mail “to all persons having unfulfilled contracts with the corporation.” And in August 1998 when the liquidator, Mr. William Kelley, distributed the assets of Buzzy P to its only shareholder, KCI, it is undisputed that Eagle and Buzzy P had an unfulfilled contract. Eagle had an existing contractual relationship that called for annual retrospective premium adjustments in April of each year. The next adjustment was due in April 1999. Despite this unfulfilled contract, the appointed liquidator mailed no notice whatsoever to Eagle prior to liquidation, not by registered mail, not by certified mail, not by first class mail, not by carrier pigeon.
| a A liquidator bears a fiduciary duty to the corporation being liquidated, its shareholders and to its creditors. Edwins v. Lilly, 422 So.2d 1217, 1222 (La.App. 1 Cir.1982). Specifically, “[i]n the performance of his duties, each liquidator shall be bound to exercise that care and prudence in the listing, custody, possession, control and disposition of the property and moneys of the corporation coming into his hands, and in the proper accounting therefor, and distribution thereof, as by law is imposed upon fiduciaries.” La. R.S. 12:145 G. As fiduciary, his duty is of the highest obligation required by law. Id. A liquidator must “zealously, diligently and honestly guard and champion the rights of his principal against all other persons whomsoever.” Noe v. Roussel, 310 So.2d 806, 819 (La.1975).
*26 In Edwins, 422 So.2d at 1222, this court concluded as follows concerning a liquidator’s failure to prudently handle the affairs of a corporation in liquidation:
“By remaining as liquidator without fully performing the duties required of him, he failed to prudently handle the affairs of the corporation in liquidation.”
I similarly conclude that Mr. Kelley as Buzzy P’s liquidator failed to prudently handle the affairs of the corporation in liquidation by not fully performing the duty required of him to notify Eagle of the liquidation by registered or certified mail.
Here, the majority concludes that the liquidator fulfilled its obligation through notice by publication. However, the United States Supreme Court has instructed in City of New York v. New York, New Haven & Hartford Railroad Company, 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953), “that: ‘Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).” ’ And La. R.S. | ,4-2:147 B required that Eagle receive actual notice by registered or certified mail since its address was known and a continuing contractual relationship existed.
The majority also concludes that Eagle’s own negligence absolved the liquidator from sending actual notice. It is undisputed that the liquidator believed no money was owed to Eagle because monthly loss-run reports from Eagle to Buzzy P failed to reflect the employee claim between July 1998 and April 1999. Eagle had inadvertently been attributing this claim to another, unrelated company. Even so, the trial court found that Mr. Kelley should have known of the claim’s existence, if not magnitude, by July 1998.
I do not agree that Eagle’s mistake or Mr. Kelley’s beliefs, justified or not, absolved Mr. Kelley from his high fiduciary duty as liquidator to perform his mandatory duty to send Eagle notice by registered or certified mail. See Frederick v. LeBlanc, 551 So.2d 801, 803 (La.App. 3 Cir.1989), where the Third Circuit adopted the following reasons of the trial court, which I also adopt:
Had [the creditor] been so notified, her attorney may have been able to protect her rights with respect to preserving corporate assets so that she would not end up with a worthless judgment. The liquidator’s failure to notify Plaintiff in this case makes him personally liable for the previous judgment obtained against the corporation.
The majority also asserts that Eagle compounded the problem when it paid Mr. Kelley a refund owed on a different contract after a December 1998 meeting in which Eagle reported no sums were due. But this meeting occurred nearly four months after the assets had been distributed. It is disingenuous for the majority to suggest that this meeting had any bearing on the distribution of corporate assets. And is the majority suggesting that Eagle should not have paid the debt it owed on a separate policy to create a standoff over the sums it was owed on the policy at issue? Under today’s result, such unlawful standoff and|4refusal to pay a just debt would have resulted in an unsuccessful outcome for Eagle.
Accordingly, I conclude the trial court erred when it found that Mr. Kelley as liquidator fulfilled his duties under La. R.S. 12:147 B and was not liable to Eagle as liquidator. Because of the liquidator’s failure to fulfill his duties, he caused assets due Eagle to be distributed to KCI, then to Mr. Kelley as its sole shareholder. Therefore, I would reverse the judgment *27 of the trial court in these regards and enter judgment in favor of Eagle and against Mr. William Kelley, individually, as liquidator of both Buzzy P and KCI, in the full sum of one hundred thirty-nine thousand four hundred thirty-three and no/100 dollars ($139,433.00), with interest from April 13, 2000 and court costs.
Shareholder Liability
Louisiana Revised Statutes 12:93 D provides for shareholder liability as follows: “Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him.” “Unlawful” means that which is contrary to, prohibited, or unauthorized by law. The term does not necessarily imply the element of criminality. Black’s Law Dictionary, 5th Ed. (1979). The majority converts an unlawful distribution into a lawful distribution by the simple transfer of assets from a subsidiary corporation to a parent corporation.
Here, the judgment holding Buzzy P liable to Eagle is final, as no party is appealing this aspect of the judgment. Buzzy P, therefore, lawfully owes Eagle one hundred thirty-nine thousand four hundred thirty-three and no/100 dollars ($139,433.00), with interest and costs. Accordingly, it was clearly unlawful for Buzzy P’s liquidator to distribute this sum to KCI and equally unlawful for KCI |sto distribute unlawfully held funds to its stockholders. I suggest that such transfers do not wash a distribution of its initial unlawfulness.
In McGregor v. United Film Corp., 351 So.2d 1224 (La.App. 1 Cir.1977), the assets of a debtor corporation were diverted and distributed to its only stockholder in violation of the rights of an injured employee claiming workmen’s compensation benefits. The court held that the debtor corporation’s transfer of monies to another corporation in payment of a debt owned by sole shareholder of the debtor corporation was an unlawful distribution of assets rendering the shareholder liable to creditors of creditor corporation. McGregor, 351 So.2d at 1228. The court noted that it made no difference whether the debt was liquidated or unliquidated. Id. The court also noted that the money judgment does not create a debt, but merely recognized it and makes it executory. Id.
Similarly, I conclude that KCI, as sole stockholder and recipient of the assets of Buzzy P, is liable for Eagle’s claim for retrospective premium adjustment, which was unliquidated at the time corporate assets were distributed to shareholders. Further, I conclude that Mr. and Mrs. Kelley are also liable for the same debt. They received from KCI sums that were unlawfully distributed to it and were lawfully owed to Eagle. They were not entitled to this distribution. Accordingly, I conclude that the trial court committed legal error in concluding that the distributions to KCI, then to Mr. Kelley, were lawful distributions when Buzzy P was legally obligated to Eagle.
Again the majority faults Eagle for its own loss, but Eagle’s inadvertence did not confer legality on an unlawful distribution.
The legislative intent underlying La. R.S. 12:93 D is the protection of corporate creditors. Security Center Protection Services, Inc. v. All-Pro Security, Inc., 97-1070, p. 4 (La.App. 4 Cir. 11/26/97), 703 So.2d 806, 808. | nFor Eagle to prevail on a claim under La. R.S. 12:93 D, it has the burden of establishing that there was an unlawful distribution of assets and that this distribution was made to shareholders. AMP Service Corp. v. Richard, 419 So.2d 911, 914 (La.1982). Eagle has met both of these elements. Accordingly, I would find *28 merit in Eagle’s second assignment of error. I would enter judgment pursuant to La. R.S. 12:98 D in favor of Eagle and against KCI, as sole stockholder of Buzzy P, in the full sum of One hundred thirty-nine thousand four hundred thirty-three and no/100 dollars ($139,433.00), with interest from April 13, 2000 and court costs. Further I would enter judgment pursuant to La. R.S. 12:93 D in favor of Eagle and against Mr. and Mrs. Kelley in the full sum of One hundred thirty-nine thousand four hundred thirty-three and no/100 dollars ($139,433.00), with interest from April 13, 2000 and court costs. I conclude that this sum is less than the amount distributed to KCI and the Kelleys as shareholders, thus awardable under La. R.S. 12:93 D.
Result
This anti-business, pro-windfall decision incorrectly deprives Eagle of its contractually established right to reimbursement of sums it paid on behalf of Buzzy P and gives undue enrichment to Mr. and Mrs. Kelley. The trial court specifically stated it did not believe that Eagle’s failure to list this claim on its loss-run report forms “had any substantial effect” on Mr. Kelley’s decision about the sale of corporate assets. It concluded that Mr. Kelley did not prove that he detrimentally relied on Eagle’s inadvertent failure to list this claim when it determined the sale price for Buzzy P’s assets.
Had the law authorized today’s result, I would agree. But, I believe that both the liquidator and the shareholders to whom Eagle’s money was distributed are lawfully obligated to Eagle. Respectfully, I dissent.